# William S. Moss

*v.*

# Louisa McCall *et al.*

1. INTEREST — *in partnership accounts.* Where the original articles of copartnership contain no such provision, it is not proper, in taking an account, to charge each partner with interest on his individual account, and to credit each one with interest on moneys paid in, unless a subsequent agreement to that effect is clearly and satisfactorily proved.

2. SAME — *construction of agreement as between partners.* But an agreement between partners that interest shall be computed on each one's account, and on the moneys paid in by him, will not justify computing interest on the individual accounts from the dates of the several charges up to the close of the business, independent of whether the amounts drawn out exceed the just share of the profits to the respective dates, due the several partners.

3. Such an agreement, if proved, will be understood to mean that each partner shall be charged with the interest on his individual account in excess of his share of the profits, and credited with interest on moneys advanced over and above his indebtedness to the firm.

4. CHANCERY — *evidence, how preserved.* Evidence contained in depositions on file form a part of the record in a chancery suit without any certificate of the judge for that purpose. The same rule prevails as to exhibits made part of the bill or answer, and filed therewith, and this court will presume they were considered on the hearing. As to other evidence, the party seeking to sustain the decree in his favor, must preserve it, either in a certificate under the hand and seal of the judge who heard the cause, or in the decree itself. When not so preserved, no presumption will be indulged that it was heard.

5. CHANCERY PRACTICE — *reference to master to state account.* On bill for a partnership account involving complicated accounts consisting of transactions extending through a series of years, where questions were also involved as to the basis of stating the account, as, whether interest should be charged and credited, the court should, by an interlocutory decree, settle the rights of the several partners and determine the basis of settlement, and then refer the cause to a competent master to state the accounts, leaving any one dissatisfied to except to the report.

6. In all cases of a complicated character involving much computation and labor, the rule is well recognized and established that a reference should be made to a master to render a concise and accurate statement of the accounts, so that the same may be readily comprehended, and any objection taken passed upon understandingly. And it is error to hear such cases without a reference and report.

7. STIPULATION — *cannot overcome recitals in record.* Where the record of a chancery cause shows that it was heard at a certain term, this must be taken as true, notwithstanding a stipulation is found on file made at a preceding term, that the judge should hear the same at chambers in vacation.

WRIT OF ERROR to the Circuit Court of Woodford county; the Hon. S. L. RICHMOND, Judge, presiding.

Mr. D. McCULLOCH, and Mr. E. G. JOHNSON, for the plaintiff in error.

Messrs. INGERSOLL & PUTERBAUGH, for the defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill was exhibited by James H. McCall, in his lifetime, and Perry Frazer against William S. Moss and Lydia Bradley, administratrix of the estate of Tobias Bradley, in the Peoria Cir-

cuit Court, to settle the equities existing between them and William S. Moss, and Tobias Bradley, deceased, as former partners. The original firm of Moss, Bradley & Co. was formed in 1853, and consisted of William S. Moss, Tobias Bradley, James Smith and James H. McCall. Smith died soon after, and his interest in the firm seems to have been assumed by Moss and Bradley.

Written articles of copartnership were entered into, from which it appears the partnership was formed for the purpose of carrying on the milling and distillery business, the distillery building to be erected on a lot for which McCall had a lease from the school trustees. The agreement was, McCall was to sell and convey to Moss, Bradley and Smith three undivided fourths of his interest in his lease for the lot, the flouring mill and other buildings thereon, together with all the machinery, for the sum of three thousand five hundred dollars for the whole ; that is, two thousand six hundred and twenty-five dollars for the three-fourths, of which sum one thousand dollars was to be paid in cash, and the balance to be expended, as capital belonging to McCall, in the erection of buildings. Moss agreed that after that sum had been expended on the share of McCall in the building, he would furnish him a sufficient sum of money to finish his share, McCall to pay him interest at the rate of ten per centum per annum. This firm continued until June 2, 1856, when Frazer, having purchased one-fourth interest from Moss and Bradley, was taken in as a partner under the old firm name, and under the original contract. He was to pay for the one-fourth interest out of the profits of the business, with interest at the rate of ten per cent per annum. This latter firm continued in business till 1862, when McCall sold out his interest in the mill, distillery and real estate to Raymond and Francis, retaining his interest in the assets and property of the former firms.

The firm of Moss, Bradley & Co., both before and after Frazer was taken in, did a large amount of business, and realized great gains and profits. The bill is framed on the

theory, each partner was to be charged with interest on his individual account, and was to be credited with interest on moneys paid in. The original articles of copartnership contained no such provision, and whether the decree in this case can be maintained depends upon whether any such agreement has been proven, so as to charge Moss and the estate of Bradley.

The business has been much complicated by the mingling of interests of what are designated as firms one and two and three, with the subsequent firms that were formed, so that it is quite difficult to get a clear understanding of the affairs of the parties to this litigation. On the hearing, a decree was rendered finding there was due complainants from defendants eighty-two thousand four hundred and eight dollars and eleven cents, of which sum McCall was entitled to thirty-seven thousand one hundred and forty-one dollars and four cents, and Frazer forty-five thousand two hundred and sixty-seven dollars and seven cents, a distinct part to be paid by Moss, and the residue by Mrs. Bradley, in due course of administration, in proportions fixed by the decree. To reverse that decree, Moss brings the case to this court on error.

We have examined the case with that care its magnitude and importance demand, but we are unable to determine from the record whether the decree does justice between the parties. It rests solely upon the assumption that it was proven there was a subsequent agreement with the several partners that each should be charged with interest upon the items of his individual account, and should be credited with interest upon all moneys paid in. Even upon this theory of the case we cannot know that the decree is warranted by the evidence. The cause was not referred to a master, but the decree seems to be based on a computation made by one witness, assisted by others, who undertook to balance the books. What principle he adopted, or how he made the calculations, does not appear from any thing in the record. The calculations, so far as we understand the testimony, seem to have been made by com-

25—75th Ill.

puting interest on the individual accounts from the date of the several charges up to the date of the closing of the business, independently of the question whether the amounts drawn out exceeded the just share of profits to the respective dates due the several partners. This we do not think was correct. Conceding the agreement was as alleged, it certainly did not mean each partner was to be charged with interest on his own profits. An agreement to that extent ought, before it will be enforced in a court of conscience, to be proven by the most satisfactory evidence. No more could have been understood by the agreement alleged, than that each partner should be charged with interest on his individual account in excess of his share of the profits, and credited with interest on moneys advanced over and above his indebtedness to the firm. Any other construction would be most inequitable. This view is consistent with the original articles of co-partnership. McCall, by the agreement, was to pay interest at the rate of ten per cent per annum on his indebtedness until the same was discharged; but, can it be contended, that, had he paid in money to discharge that indebtedness to Moss, he should be allowed interest upon it, and Moss thereafter charged with interest? It will be remembered Frazer purchased one-fourth interest of Moss and Bradley in the firm, to be paid for out of his share of the profits, with interest at the rate of ten per cent per annum. It would be absurd to hold, that, when a share of his profits was credited to Moss and Bradley in discharge of his indebtedness he should be charged with interest on the amount, and in case Moss and Bradley should then draw out the same to their personal use, they should be charged with interest also. The only reasonable construction that can be given to the agreement contended for, if any existed, is, that each partner should be charged with interest on his individual account over his just share of the profits, and be credited with moneys he advanced in excess of his indebtedness to the firm.

The court did not find that any agreement to pay interest, such as is insisted upon, was proven, and we do not find any

satisfactory evidence of it in the record. No interest account was kept during the time the firms of Moss, Bradley & Co. did business, but long after those firms ceased to carry on business, Bradley undertook to have the books balanced. He died before this bill was filed, but there is some testimony to the effect he directed the book keeper to charge and credit the individual accounts of the partners with interest. What he may have said to the book keeper on this subject could in no way bind Moss. The firms had then ceased to do business, and Moss was absent from the State. We fail to discover any evidence in the present record that Moss ever agreed to the arrangement contended for, to allow interest upon each partner's individual account.

There is no certificate of evidence in this record, but it is suggested there may have been other evidence that would support the decree. The practice has made it incumbent on a party seeking to sustain a decree in his favor, to preserve the evidence on which it is based, either in a certificate under the hand and seal of the judge who heard the cause, or in the decree itself. Complainants in this case have done neither. Evidence contained in depositions on file, form a part of the record, without any certificate of the judge for that purpose. The same rule prevails as to exhibits made part of the bill or answer, filed therewith, and the court will presume they were considered on the hearing. *Bressler* v. *McCune,* 56 Ill. 475.

This record contains all the evidence that appears to have been heard in the court below. If it does not, it was the duty of the party in whose favor the decree was, to preserve what other evidence there was in some appropriate manner. The rule on this subject was stated in *Brooks et al.* v. *Martin et al.* 64 Ill. 389, where it was held that if the record does not contain all the evidence heard in the cause, it is for the party complaining of such omission to supply it.

But there is another reason why this decree must be set aside. In order to ascertain whether the amounts found to be due to complainants from defendants, are warranted by the evidence,

an investigation of complicated partnership accounts between these parties would be necessary, consisting of transactions extending through a series of years. These accounts in the aggregate amount to many hundred thousands, and perhaps millions of dollars. One witness said, to make all necessary calculations on the basis suggested, would require a lifetime. This may be an exaggerated form of expression, but it would certainly require a very great amount of labor to make all calculations necessary to adjust the rights of parties. It is not the duty of an appellate court to assume to perform this labor. The court, in the first place, should have settled the rights of the partners, whether interest was to be computed on their individual accounts with the firms, and having determined the basis by an interlocutory decree, should have referred the cause to a competent master to state the accounts, and, if either was dissatisfied with the conclusion reached, upon exceptions being filed, the question could have been readily determined by the court. As it is, the testimony comes before us in a confused mass, rendering it impracticable for us, in any reasonable time, to pass upon the objections to the findings of the court. Counsel will not be permitted, by stipulation or otherwise, to impose upon an appellate court the performance of duties that should be performed by a master in chancery. Where accounts involve large sums of money, and testimony as to the rights of parties, conflicting and unsatisfactory, in conformity with the rules of chancery practice, the cause must be referred to a master to render a concise and accurate statement of the accounts, so that the same may be readily comprehended, and any objection taken passed upon understandingly. This is the well recognized and established practice in all cases of a complicated character, and should have been adopted in this case. *Steere* v. *Hoagland*, 39 Ill. 264 ; *Bressler* v. *McCune, supra ; Riner* v. *Tousle*, 62 Ill. 266 ; *Grouch* v. *Stenger*, 65 Ill. 481 ; *Dubourg* v. *The United States*, 7 Peters, 625. The case of *Grouch* v. *Stenger* is an authority exactly in point, where the accounts

between the parties were complicated, and the decree was reversed because the case had not been referred to a master to state an account.

The correctness of the practice established by these cases is not contested, but to avoid the force of the rule, it is urged this cause was tried on a stipulation, and an affirmance is asked on the principle of *Riner* v. *Tousle, supra.* The suggestion has no foundation in the record. It appears the decree was rendered in open court at the December term, 1870. The stipulation signed by counsel at the previous August term, to the effect the case might be heard by the judge at chambers in vacation, although found among the files, is no part of the record, and has not been made so in any manner to entitle it to be considered in this court. But if it was, it does not appear the cause was ever heard upon that stipulation at chambers. The record imports verity, and that shows the cause was heard at the December term. Nothing to the contrary appearing, we must regard the case as having been heard and decided in open court. That being so, the rule announced in the cases cited is applicable, and the court should have first determined the rights of the parties, and if it decided an account should be taken, settled the basis by an interlocutory decree, and then referred the cause to the master in chancery, in accordance with the practice in such cases.

Because of the errors indicated, the decree will be reversed, and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion.

*Decree reversed.*