TIMOTHY MOSIER

*v.*

DAVID NORTON *et al.*

1. USURY—*how pleaded in chancery.* A general charge of usury in an answer to a bill in chancery, will amount to nothing, unless facts are alleged showing wherein the usury consists.

2. SAME—*pleading and proof.* The defense of usury is regarded as in the nature of a penal action, and not only is great strictness required in the pleadings, but the contract must be proved as alleged, by a clear preponderance of the evidence.

3. SAME—*sale of lots at fictitious price.* If a party loans money, and at the same time sells lots to the borrower at a fictitious value, taking a note for the whole, merely to secure an unlawful rate of interest on the loan, the transaction will be usurious. But the fact that a party sells property and loans the consideration to the purchaser, with other funds, affords no presumption the transaction is usurious.

4. PLEADING AND EVIDENCE—*variance.* The rule is the same in chancery as at law, that a contract must be proved as stated in the pleadings. If the contract is alleged to be usurious, the usury must be proved as charged.

5. MORTGAGE—*foreclosure—tacking prior lien paid.* If a mortgagee redeems from a mortgage which is a prior lien, upon bill to foreclose his mortgage he will have the clear right to tack the amount so paid by him, to protect his rights, and if the mortgage redeemed from bore interest at ten per cent, the same rate will be allowed to the party redeeming.

6. SAME — *liability of mortgagee in possession.* Ordinarily a mortgagee in possession is only required to account for the actual receipts less such sums as he may have paid out for taxes and necessary repairs, unless it is shown that more could have been realized by reasonable diligence. He

520 MOSIER *v.* NORTON *et al.* [Sept. T.

Opinion of the Court.

will be responsible for gross negligence resulting in loss to the mortgagor.

7. CHANCERY—*stating account.* Where an account is to be taken of the rents and profits of lands in the possession of a mortgagee, and the taxes paid and repairs made by him, the court should first declare, by interlocutory decree, the rights of the parties, and the rule to be adopted in stating the account, and then refer the cause to the master in chancery. Counsel will not be permitted to impose upon this court, by stipulation or otherwise, the performance of the duties that pertain to the office of master in chancery.

APPEAL from the Circuit Court of Henry county; the Hon. GEO. W. PLEASANTS, Judge, presiding.

This was a bill filed by Timothy Mosier, against David Norton, Hiram Bigelow and others, to foreclose a mortgage given by Norton and wife to the complainant, to secure the payment of a note for $6000, dated November 4, 1857, payable two years after date, with ten per cent annual interest.

The bill also claimed the sum of $2782.50 paid for redemption of the land from a sale under a prior mortgage given by Norton, together with ten per cent interest from the time of redemption, the 4th day of August, 1860.

The defendants answered, and filed a cross-bill admitting the execution of the note and mortgage, and the payment of the redemption money, and alleging usury in the original contract, and also setting up that Mosier took possession of the mortgaged premises on March 1, 1862, and had received the rents and profits since that time. The original bill was filed September 6, 1866.

Messrs. MILLER & FROST, for the appellant.

Mr. H. BIGELOW, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The point most contested in this case is, whether the note secured by the mortgage sought to be foreclosed is usurious. Defendants charge the note was "executed and delivered in pursuance of a fraudulent, corrupt, illegal and usurious agree-

ment," but it is apprehended this general charge amounts to nothing unless facts are alleged showing wherein the usury consists. *Dunham* v. *Tucker et al.* 40 Ill. 519; *Frank* v. *Morris*, 57 id. 138.

An attempt is made to state in what the usury consists, but the allegations in the answer in this regard are not consistent. One statement is, the actual consideration of the note consisted of $2500 indebtedness of Gilbraith to complainant, $1200 in notes on other persons, $800 in Nebraska currency, alleged to be utterly worthless, and three lots taken at the sum of $1500, making the consideration of the note $6000; but it is alleged the real estate was represented and claimed to be only of the value of $900, and although put in at $1500, it was that complainant might reserve $600 illegal and usurious interest, over and above the ten per cent per annum agreed to be paid in the note itself, and that all complainant would be entitled to recover would be the $2500 due from Gilbraith, the $1200 in notes afterwards paid, the real value of the Nebraska currency, and the real value of the lots, if they were worth anything, without interest on the note, or the real value of the property for which it was given. Claiming the full benefit of the law against taking a greater rate of interest than ten per cent per annum, defendants make another statement: If it shall appear the Nebraska currency was worth $800, then complainant is only entitled to recover $2500 due from Gilbraith, $1200 in notes, $800 in Nebraska currency, and the value of the real estate, alleged not to exceed $100, without interest upon any of the several sums; that the note and mortgage were made to evade the usury laws of the State, and by which means, if the note was paid, complainant would get $1400 extra interest, beside the amount reserved in the note.

Barring the objection, the answer does not disclose facts showing wherein the usury consists, the uniform practice requires the usurious contract must be proved as stated. The rule is the same in chancery as at law. Such a defense is regarded as in the nature of a penal action, and not only is great

522          MOSIER *v.* NORTON *et al.*          [Sept. T.

Opinion of the Court.

strictness required in the pleading, but the contract must be proven as alleged, by a clear preponderance of the evidence. That has not been done in this case. Neither statement of the actual consideration of the note has been proven. Certainly it can not be claimed any contract between the parties, participated in and assented to by both of them, is proven, in which the sum of $1400 was agreed upon as usurious interest above that contracted for in the note.

Nor can it be maintained the other statement of the actual consideration of the note is sustained by a preponderance of the testimony. Norton, the principal debtor, does not testify that he was to or did take $800 in depreciated Nebraska currency. His recollection, on reflection, is, that it was but $600, and that the other $200 was paid in other currency. But in this statement he is evidently mistaken. All the testimony is, the $800 was paid in checks, and both the bankers upon whom they were drawn testified they were made payable in currency; that complainant had no Nebraska funds on deposit with them, and while it is, perhaps, true they paid the checks nearly, if not wholly, in Nebraska currency, they say if Norton had objected to taking it they would have paid in other currency that would have been satisfactory. As respects the value of the lots put into the loan, Norton says they were of trifling value, and that complainant only claimed the lots in the aggregate were worth $900; but complainant is equally positive the consideration agreed upon was $1500. There is very little other evidence that tends to strengthen the testimony of either party.

But, aside from any question of variance between the contract alleged and the proof, we are not satisfied it has been shown, by any preponderance of the evidence, the contract between the parties was tainted with usury. No doubt the proposition is correct, that if the lots were put at a fictitious value merely to secure an unlawful rate of interest on the loan, the transaction would be usurious and within the purview of the statute. Parties will not be permitted to adopt any such device to evade the laws of the State prohibiting the taking of

usurious interest.   On the other hand, such a contract as the parties made may be valid.   A party may sell goods or lands, and loan the consideration to the purchaser, with other funds, and the remark of an English judge, that a presumption arises such a transaction is usurious, is not the law.   No legal inference arises either way, but it is simply a question of fact. What the contract really is, whether lawful or usurious, is a matter of evidence, to be found by the jury as any other fact in the case.

In this case the borrower states he would not have purchased the lots at all but to obtain the loan, which he much needed. That is, no doubt, true; but it may also be true the creditor would not have been willing to make the loan had he not been able to sell his real estate at what he really thought it was worth, and still the contract may have been free from usury. That depends on the evidence.   The statement of the debtor is, the land was connected with the loan as a device to evade the usury laws of the State; but this is met by a broad and unequivocal denial by the creditor.   As respects the real value of the lots at the time of the transaction, the testimony is irreconcilably conflicting.   Evidence offered tends to show the lots were worth more than the price at which they were put in, and other testimony, equally credible, tends to show they were of very little value, perhaps not exceeding fifty or one hundred dollars per lot.   Complainant is positive he told Norton that he asked $1500 for the lots, and that Norton took time to consider of the proposition.   Norton says he did not know the value of the lots; but the evidence is clear he advised with two friends as to the value, and afterwards closed the contract.

Under the conflicting evidence in the record, it can not be said it is proven the lots were put into the loan at a fictitious price, as a shift or device to evade the usury laws and secure a greater rate of interest on the amount of money loaned than the law allows.   Norton was under no sort of obligation to take Nebraska currency from the banks on the checks for the $800, and if he did it was his own folly.   What he says in

regard to the real estate tends more to show he was over-reached as to the price he contracted to pay for it, rather than to establish the fact of usury. This, it seems to us, is the only theory that can be adopted consistently with the evidence.

Complainant redeemed the mortgaged premises from a sale under a decree of foreclosure of a mortgage that was a prior lien, and seeks to tack the amount so paid to his mortgage indebtedness. This he had the clear right to do, and it was indispensable to protect his rights under his own mortgage. As that indebtedness was bearing interest at the rate of ten per cent per annum, it is equitable complainant should recover interest on the sum advanced at the same rate. To that extent it relieved the obligation of Norton. *Moore* v. *Titman*, 44 Ill. 367.

In 1862 complainant went into possession of the mortgaged premises. Ever since that time he has paid taxes, made necessary repairs, and enjoyed the rents and profits. A vast mass of testimony has been taken in regard to these matters, with a view to adjust the equities between the parties. There does not seem to be much dispute as to the rule the court should adopt to ascertain the rents and profits with which complainant should be charged, except as to the years 1863 and 1864. Ordinarily a mortgagee in possession is only required to account for the actual receipts, less such sums as he may have paid out for taxes and necessary repairs, unless where the evidence shows, by reasonable diligence more could have been realized. Of course he would be answerable for any gross neglect which might result in loss to the mortgagor whose possession he holds. Any more stringent rule than this, it seems to us, would be unjust and unreasonable. It is on account of the default of the mortgagor, that the mortgagee is in possession. The theory of the law is, he is there to receive the rents and profits of the premises actually accruing, until his claim is satisfied. It is without fault on his part, and it is unlike one whose possession is wrongful, and for that reason, by way of meting out to him a degree of punishment, he is

to be charged with all that could be realized by the utmost diligence. *McConnel* v. *Holobush*, 11 Ill. 61.

On the hearing the court undertook the labor of adjusting the accounts in relation to the rents and profits of the mortgaged premises, the taxes paid, and the value of the necessary repairs, and with the conclusion reached both parties are dissatisfied. Defendants have assigned cross-errors, that the court erred in not dismissing the original bill, and in not decreeing in their favor on the cross-bill, in which they had asked that an account should be taken. But we shall not enter upon the consideration of this branch of the case. Counsel will not be permitted, by stipulation or otherwise, for their own convenience, to impose upon an appellate court the performance of duties that pertain to the office of master in chancery. As was said in *Moss* v. *McCall et al.* 75 Ill. 190: " Where accounts involve large sums of money, and the testimony as to the rights of the parties is conflicting and unsatisfactory, in conformity with the rules of chancery practice, the cause must be referred to a master to render a concise and accurate statement, so that the same may be readily comprehended, and any objection taken passed upon understandingly." That is the course that ought to have been adopted in the case at bar. The testimony in relation to the rents and profits of the mortgaged premises, and other matters of account between the parties, covering as it does a period of thirteen years, is necessarily very voluminous, and to a marked degree conflicting. Stating the account is the appropriate work of the master, and this court has had frequent occasion to say it will not undertake to perform it. *Steere* v. *Hoagland*, 39 Ill. 264; *Bressler* v. *McCune*, 56 Ill. 475; *Riner* v. *Touslee*, 62 Ill. 266; *Groch* v. *Stenger*, 65 Ill. 481. The court should first declare, by interlocutory decree, the rights of the parties and the rule to be adopted in stating the account, and then refer the cause to the master in chancery.

The decree will be reversed, and cause remanded; and because it was the duty of complainant to have had the cause

referred to the master, and which he did not ask to have done, the costs in this court will be equally divided, and each party will be adjudged to pay one-half.

*Decree reversed.*