## ASA H. DANFORTH ET AL.

### v.

### JOHN D. MCINTYRE ET AL.

1. PRACTICE IN CHANCERY—REFERENCE TO MASTER.—Where an accounting is to be had, and the accounts are of long standing and complicated, it is the duty of the court below to refer the cause to a master in chancery, for the purpose of stating the account.

2. WRITTEN AGREEMENT—SUBSEQUENT PAROL CONTRACT.—Although parties may have entered into a written contract respecting certain transactions, they may make a subsequent independent agreement by parol, touching the same matters.

3. TRIAL OF CHANCERY CASE ON APPEAL.—The appellate court in reviewing the proceedings in a chancery case, tries the cause on the record as the court below should have tried it, and as a general rule there are no presumptions in favor of a decree as in the case of a judgment at law.

APPEAL from the Circuit Court of Tazewell county; the Hon. N. M. LAWS, Judge, presiding. Opinion filed September 26, 1882.

Mr. J. W. DOUGHERTY, for appellants; that a sealed executory contract can not be modified by parol agreement, cited Chapman v. McGrew, 20 Ill. 101; Hume v. Taylor, 63 Ill. 43; Barnett v. Barnes, 73 Ill. 216; Cardwent v. Hunt, 8 Tenn. 596; De La Croix v. Bulkley, 13 Wend. 71; Eddy v. Graves, 23 Wend. 82; Seward v. Patterson, 3 Black, 353; Kimball v. Custer, 73 Ill. 389; Mer. Ins. Co. v. Morrison, 63 Ill. 242; Clark v. Pope, 70 Ill. 128; Ford v. McVay, 55 Ill. 119; Weaver v. Fries, 85 Ill. 356.

A contract can not vest partly in writing and partly by parol: Marshall v. Gridley, 46 Ill. 247; Purington v. N. Ill. R. R. Co. 46 Ill. 297.

Every contract must be founded upon a good consideration: McLean v. McBean, 74 Ill. 134; Bishop v. Busse, 69 Ill. 403.

Messrs. PRETTYMAN & SONS, for appellees.

McCULLOCH, J. On the 11th day of July, A. D. 1871, Gideon H. Rupert, since deceased, sold and conveyed to ap-

pellee McIntyre the undivided one half of the Hamburgh distillery in the city of Pekin, for the sum of nine thousand dollars, taking notes secured by mortgage upon the premises so sold for the purchase money. At the same time said Rupert executed to said appellee a lease for five years on the other undivided half of said distillery for the yearly rental of twelve hundred dollars, with the further agreement that appellee should make such repairs, in and upon the distillery as might be necessary to operate the same with profit, and should erect in said distillery building or in connection therewith, such works and machinery as might be necessary for the purpose of distilling alcohol from the spirits produced in the operation of the distillery, and that one half of the cost and expenses of making such repairs and erecting such alcohol works, should be applied upon the payment of and accredited upon the rent, or so much thereof as should be sufficient to pay and extinguish the rent if such expenses should exceed the rent.

Appellants filed this bill to foreclose said mortgage, to which McIntyre interposes the defense that during the lifetime of said Rupert and at his instance and request, he paid, laid out and expended large sums of money and property to an amount much larger and greatly exceeding the sum of all of the said notes, and thereby completely paid and satisfied said notes and mortgage.

The lease did not provide that if Rupert's one half of the cost of making such repairs and improvements should exceed the rent therein reserved, the overplus should be applied upon the notes. But the court finds that immediately after said McIntyre entered into possession of said premises under his deed and lease from Rupert, a new arrangement was entered into between them looking to the formation of a partnership between said McIntyre and C. J. D. Rupert, who was a son of said G. H. Rupert, and then in bad health. By this new arrangement as the court below found it, McIntyre was to proceed at the joint expense of himself and said G. H. Rupert, and put said distillery building machinery therein, and premises, in thorough repair, and to erect such other additional buildings and improvements therein as he might deem

necessary, and keep the same in first-class order so that the same premises and appurtenances would be in first-class repair and condition for said C. J. D. Rupert to go into business with said McIntyre, and that said McIntyre should thereafter from time to time furnish other money for the use and at the request of said G. H. Rupert, to be applied in the support and maintenance of said C. J. D. Rupert, and his family, until he should recover his health and go into business with said McIntyre; and that all the money so furnished by said McIntyre should be credited on and applied on the rents and in extinguishment of said notes and interest thereon, and as payments thereof, so far as it would apply.

The court further finds that in pursuance of such agreement said McIntyre laid out for the support of said C. J. D. Rupert the sum of $5,278.21, and that he erected various improvements and buildings upon said premises, the cost of which amounted to $32,473.74, all of which improvements were made between the date of said lease and the death of said G. H. Rupert, and before the expiration of the term of said lease, and were paid for by said McIntyre alone. The court then finds what portion of said money was so expended in each of the years succeeding the making of the lease, and up to the time of said Rupert's death, and decrees the same to be applied annually to the extinguishment of the rents, and also to the notes and mortgages, all of which the court found to be satisfied, and therefore dismissed the bill.

It will be observed the lease only provides that McIntyre should make such repairs upon the distillery as might be necessary to operate the same with profit, and should also erect alcohol works in connection therewith, and that one half the cost of making such repairs and erecting such alcohol works should be taken out of the rent. It is silent as to the keeping of the distillery in repair during the term, and after the repairs spoken of in the lease should be made and paid for. We are unable to tell, from the findings of the decree, whether or not the new agreement contemplated that Rupert was to be at one half the expense of keeping the buildings in repair during the entire term, or whether his liability was to cease when the

buildings and works were all completed and put in good running order. Nor can we tell from the decree itself whether or not the subsequent expenses of keeping the distillery and its appurtenances in repair, after they were once put in order, were allowed by the court.

It is objected to the decree, that the court erred in allowing appellees to prove a parol agreement different from the lease, which is an instrument under seal, to vary and control its terms. We are unable to see why the parties could not by a subsequent agreement, wholly independent of the lease, agree, by parol, to the making of other and more extensive improvements upon the property demised, than those specified therein, and that the cost of making such improvements might be applied upon either the rent or the purchase money or both. If the agreement recited in the decree, in any respect, covers the same subject-matter as the covenants in the lease so as to vary its terms, it would seem to be in respect to the keeping of the premises in repair during the term. But from anything yet appearing we do not see that any allowance on that ground was made.

It is, however, contended that the decree is unsupported by the evidence, and that the court erred in not having a proper computation made and preserved of record, showing the manner in which the notes and mortgages were extinguished. Here we meet with an insuperable difficulty. In examining the record we find a reference to the master to take and report the proofs but no reference for the purpose of stating the account. Nor do we find any statement of the account made by the master. We have in the record a large mass of evidence including a great many bills of items furnished by dealers in lumber and hardware, by plumbers, coppersmiths, boiler makers and other persons furnishing materials and labor. We find also a statement made up from the books of McIntyre, showing, as we suppose, the aggregate of these bills, at least so far as they were for repairs or improvements to the distillery. This statement covers about sixty pages of the record, while the bills themselves cover about two hundred. The statement from the books covers a period of nearly six years,

and is made up of many hundreds of entries.    Whether it
embraces the money paid out for the support of C. J. D. Ru-
pert and his family or not we can not tell.    It appears, how-
ever, that the court found the amount expended for repairs and
improvements alone exceeded the balance found by this state·
ment, to say nothing of the other moneys expended.    S⟩ too
it appears from some of the bills that they embrace items
which evidently ought not to be allowed as a set-off to or pay-
ment upon either rent or purchase money.    Whether or not
these have been properly eliminated from the statement sub-
mitted, or from the findings of the court, we are unable to tell.
The whole case furnishes an apt illustration of the propriety
of the rule of practice laid down in Mosier v. Norton, 83 Ill.
519 that "Where accounts involve large sums of money
and the testimony as to the rights of the parties is con-
flicting and unsatisfactory, in conformity with the rules
of chancery practice, the cause must be referred to a master
to render a concise and accurate statement, so that the same
may be readily comprehended and any objection taken passed
upon understandingly.    *   *   *    The court should first de-
clare, by interlocutory decree, the rights of the parties and the
rule to be adopted in stating the account, and then refer the
cause to the master in chancery."    Moss v. McCall, 75 Ill.
190; Steere v. Hoagland, 39 Ill. 264; Quayle v. Guild, 83 Ill.
553; Koon v. Hollingsworth, 97 Ill. 52; Daly v. St. Patrick's
Church, Id. 19.

It is urged, however, that appellants are in no condition to
urge this point inasmuch as they made no motion in the court
below to have the cause so referred.    Even if this were true
we can not see that their fault in that regard is any greater
than that of appellees.    Appellants had made out their case
by the production of the notes and mortgage.    It was then
incumbent upon appellees to overcome that *prima facie* case
by a preponderance of the evidence, and to so preserve the
facts found in support of such decree, that the appellate
court can, by an examination of the record, pass upon them in-
telligently.

This court in reviewing the proceedings in a chancery cause
tries the case on the record as the court below should have

tried it; and while it is true that where the witnesses in the court below are all examined orally on the hearing, so that the chancellor has the same facilities for judging of their credibility as a jury would, the error in the finding as to fact must be clear and palpable to authorize a reversal, yet as a general rule there are no presumptions in favor of the decree as in case of a judgment at law. Flagg v. Stowe, 85 Ill. 164; Coari v. Olsen, 91 Ill. 273.

It is a rule long ago adopted by the Supreme Court, that where an accounting is to be had, and the accounts are of long standing and complicated and a large amount of money is involved, when the record of the court below comes up in such shape that the appellate court can not intelligently pass upon the rights of the parties without performing labor which ought in the court below to have been assigned to the master in chancery, the decree will be reversed and the cause remanded. We regard the rule as a salutary one and shall follow it in this case. The decree will be reversed and the cause remanded for further proceedings, in conformity with this opinion.

Decree reversed and remanded.