Moshier v. Norton et al.

---

TIMOTHY MOSHIER

v.

DAVID NORTON ET AL.

EVIDENCE AS TO RECEIPTS.—Where the Supreme Court had twice passed upon a case and directed that appellant should be charged with actual receipts, and the court below, when the case came up a third time, made an interlocutory order adopting a different rule, by which the master was directed to assume the average of the grain raised subsequently to 1870, as the

Moshier v. Norton et al.

amount that was raised and received by appellant for each year of the years 1865 to 1870, inclusive. *Held*, that under the decisions of the Supreme Court, this was error. Such evidence in view of the positive evidence as to the receipts given by appellant and his witnesses, should have but little if any weight.

APPEAL from the Circuit Court of Stark county; the Hon. N. M. LAWS, Judge, presiding. Opinion filed February 29, 1884.

Mr. JOHN C. PEPPER, and Mr. MILES A. FULLER, for appellant; cited Moshier v. Norton, 83 Ill. 519; 100 Ill. 63.

An objection to the admission of alleged newly discovered evidence on the ground that it consists of the testimony of witnesses who have been once examined is well taken: Ruggles v. Eddy, 11 Blatchf. 524; Jones v. Purefoy, 1 Vernon, 45; Finley v. Tyler, 3 T. B. Monroe, 400; Brewer v. Bowman, 3 J. J. Marshall, 492; Rogers v. Marshall, 15 Chicago Legal News, 51.

Mr. H. BIGELOW and Mr. C. C. WILSON, for appellees.

LACEY, P. J. This case has been twice in the Supreme Court, and will be found reported in 83 Ill. 519, and 100 Ill. 63. The suit was a bill in equity brought by appellant to foreclose a mortgage which he held upon the land of appellee, Norton, to which the latter filed an answer setting up that usury existed in the inception of the contract by which the original debt was created, and for that reason claiming a rebate of all the interest; also setting up that the appellant had taken possession of the mortgaged premises in 1862, and had received the rents and profits to an extent equal to the entire debt. The cause was tried on three issues, and prior to the first appeal the court found that the contract was usurious, and that the appellant had received out of the rents and profits enough to satisfy the debt, with the exception of about $30, and decreed accordingly. From the decree the appellant took an appeal to the Supreme Court, and upon a hearing in that court the decree of the circuit court was reversed and the cause remanded for a rehearing,

Moshier v. Norton et al.

the Supreme Court finding that there was no usury in the contract, and that the appellant should be charged with the rents and profits actually received, or what might have been received by the use of reasonable diligence, less the taxes and necessary repairs, and would be answerable only for gross neglect, which might result in loss to the mortgagor whose possession appellant held. See 83 Ill. 519. The case was again heard in the circuit court upon the same, and some additional evidence taken on the question of usury as well as the question of rents and profits; and on rendering another decree it found that there was no usury in the contract, in harmony with the holding of the Supreme Court; but the court then departing from the rule of the Supreme Court, further held that it could not, from the evidence, find the amount of the actual products of said land, or the value thereof for the years 1862 to 1879, inclusive, and discarding the rule of actual receipts from the evidence found the reasonable rent as follows: for the years 1862 and 1863, at $1 per acre; for the years 1864 to 1867, inclusive, $3 per acre, and from the year 1868 to 1879, inclusive, $3.50 per acre; and the case being referred to the master to state the account on that basis, the latter reported that the entire mortgage and interest had been paid by the rents and profits, and the appellant re-imbursed for all expenditures on account of taxes and necessary repairs, and that besides that amount there was due appellee the sum of $2,111.62, which report was approved and the bill dismissed; upon appeal to this court the decree was affirmed, and further appeal was taken to the Supreme Court. In the Supreme Court, cross-errors were assigned, to the effect that the court below erred in not finding usury. The Supreme Court upon hearing, reversed the decree of the appellate court and ordered it to reverse the decree of the circuit court. The Supreme Court held on the last appeal as well as the first that there was no usury in the contract, and though some additional evidence had been taken, the case on that question was not substantially variant from what it was when it was before it on the first appeal. It was further held that the circuit court erred in adopting the reasonable rental value of the lands as

the proper basis upon which to charge appellant, instead of the actual receipts as prescribed by the Supreme Court when the case was there on the first appeal. This court having reversed the decree of the circuit court and remanded the cause, the court below proceeded to hear and determine the case on the same evidence, together with some additional evidence, which, however, does not greatly change the case from what it was at the last trial by that court. Instead of following the directions of the Supreme Court in regard to charging appellant with actual receipts, the court below adopted in its interlocutory order another and different rule, as follows: for the years 1865 to 1870, inclusive, it directed the master to first ascertain the number of bushels of corn and oats received by appellant during the years after 1870, so far as he might be able, and adding the same together and dividing the gross number of bushels by the number of years, the quotient should be the basis of corn and oats presumed to have been delivered to appellant, as his rent for each year from 1865 to 1870, inclusive, and appellant should be charged with the market value of said crops at Galva during each year, deducting the expense of marketing the same, taking the average market price between December 1st and March 1st of each year. From the years 1871 to 1881 inclusive, the master should take appellant's evidence and his witnesses.

The master in following out this direction took the average amount of corn and oats raised for the years 1875 to 1881 inclusive, except the year 1877, not being able to find from the evidence for the other years, '71, '72, '73 and '74, the amount raised, and fixed the average amount the best he could.

For the years 1862, 1863 and 1864, the master attempted to adjust the amount chargeable to appellant on the basis of actual receipts, and as for the years 1862 and 1863, we think that there can be no just complaint made on either side. The final result of the master's finding was that on January 1, 1874, the whole of appellant's claim was paid and there was due appellee $487.90, and that at the date of the decree, Nov. 9, 1883, there was due from appellant to appellee the sum of $10,524.10, and the court approved the report; where-

upon complainant Norton in the cross-bill remitted the sum of $5,524.10 and decree was rendered against appellant for the sum of $5,000, that the same be paid within ten days, and that appellant deliver up possession and appellee pay costs. From this decree appeal is again taken by Moshier to this court.

The appellee assigns cross-errors and again insists on his claim of usury. We need not examine that question farther as it has been finally put to rest by the decision of the Supreme Court, when the case was last before it, adversely to appellee. 100 Ill. 63.

In accordance with such decision we must hold that there was no usury in the contract. There is no additional evidence to in any manner change the features of the case from what it was on the first and second hearing in respect to the question of usury.

As respects the question of the right of the court below to make the interlocutory order by which the master was directed to assume the average of the grain raised in certain years subsequently to 1870 as the amount that was raised and received by appellant for each year of the years 1865 to 1870 inclusive, we feel bound, under the decisions of the Supreme Court rendered in this case, to hold that it was error in the court below to so order. By this order the court virtually excluded and threw away all the evidence in the case as to the actual receipts for those years given by appellant himself and his agent Dunn and his tenant Osgood, and assumed to decide the amount of the rents and profits received on a theoretical basis of a most uncertain character, and almost certain to produce erroneous results. It might, under a certain state of the evidence bearing on the amount actually received for the years in question, be competent to show what the land produced in the years subsequently to 1870, as tending to show what it produced before, provided it was also shown that the seasons were the same in character and that the same amount of land was in oats and corn each year and that the cultivation and management were the same. But in accordance with the views of the Supreme Court such evidence, in face of the positive

evidence of appellant and his witnesses, should have but little if any weight. The error of the circuit court in making such order was in substance the same as made by the same court in deciding to throw away all the evidence in regard to actual receipts, and in adopting as a basis the rental value of the land for a series of years, for which error the Supreme Court reversed the decree and ordered the cause to be remanded.

In fact we think it would be much more just to appellant if the evidence of the actual receipts is to be discarded, to adopt the reasonable rental value as a basis, than the rule adopted by the court below. There would not be so much liability to do injustice.

But why did the court below need to find the amount of corn and oats raised on the land for each of the years from 1865 to 1870 inclusive?

The court gives no reason, as did the court where the prior interlocutory order was made, and that was, that "the court can not, from the evidence, find the amount of the actual products of the said land or the value thereof for these years;" but we suppose the reason was the same.

By reference to the opinion of the Supreme Court, 100 Ill. 69, we find the following language in answer to a similar question when speaking in reference to the account-rendered by appellant of the rents in dollars and cents received for those years, as follows: "When we have the amount of the money received, what need for the number of bushels of grain raised? All utility that we can see would be in the way of furnishing a test for the determining of whether the full amount of money had been received which ought to have been received. But because that test was not furnished, it is not to be assumed that if it had been, it would have shown complainant did not get his one third share of the crops; and even if it had shown that, it would not have shown that it was through any willful default or gross negligence of complainant that he failed to receive more than he did." * * * "Complainant renders an account of the amount of the actual receipts for each one of the years, but is not able to tell the number of bushels of grain raised in any year, and because of the inef-

ficiency of the evidence to ascertain the amount of the actual products of the land from year to year, or the value thereof, complainant seems to have been charged with a supposed rental value instead of with actual receipts."

The court then shows that the evidence of the complainant was corroborated, and that he used all the care that he need use under the circumstances, and if there were any laches it was chargeable to appellee instead of complainant. That the presumption of honesty must be indulged in in favor of appellant's account, and, in short, his account rendered for the years in question, which included the years from 1865 to 1870 inclusive, should be allowed as he had rendered it, and he should be alone charged on that basis.

We have examined the evidence carefully, and as respects the account for the last mentioned years, we see nothing in the present record to in any way materially change the status of the evidence as it appeared in the Supreme Court when last there. It therefore necessarily follows that the opinion of the Supreme Court should have been followed by the court below as respects those years, and in not doing so the court erred.

As to all the rents and profits charged to appellant by the master subsequently to the year 1870 there does not appear to be any complaint made by either party, and in fact we do not see that there could be any; it therefore is not necessary for us to examine the accounts for those years further, and to approve the finding of the master in regard thereto. We are also satisfied with the finding of the master in respect to his adjustment of the account for the years 1862 and 1863. We now come to the account of profits for the year 1864, over which there seems to be the most serious dispute.

Appellant charged himself with having received 10,765 bushels of corn for that year at 38 cents per bushel, of which amount he had shipped and sold 2,993 bushels and received therefor net, 38 cents per bushel, and no hay. The master, in making up his account, charges appellant with 16,000 bushels of corn received, and 50 tons of hay at $8 per ton, and the master charges $33.65 more for wheat than appellant charges himself with, and $11 less for apples. We have examined all

Moshier v. Norton et al.

the evidence, and have arrived at the conclusion that the master has overcharged as to the quantity of corn. The master seems to have taken nearly the highest estimate of any of the witnesses as to the amount of corn raised, and besides, charged to appellant all the corn raised on the farm, overlooking the fact that Lewis Osgood cultivated 40 to 45 acres, paying one third for rent, and he testifies that his corn yielded some 40 bushels to the acre. The master's report would seem to charge appellant with the entire corn raised by Osgood, whereas only one third should have been so charged. The evidence that there were 300 or more acres of corn raised on the farm, and that it would yield 50 bushels per acre, rests alone upon the mere estimate of witnesses as to the quantity of land and the amount of the yield, and some collateral admissions of appellant and Dunn, his agent, also based on such estimate.

Nothing is more deceptive than such guess work as this, and it is very weak evidence upon which to base an estimate.

On the other hand, appellant and Dunn claim to have measured the corn, but as the corn was fed, and some, probably not a large quantity, fed from the stocks and never gathered, it is claimed it was never measured. But it is easy to measure corn in the crib, and cribbing was built for about 8,000 bushels, which we understand from the evidence was used. That portion of the corn left in the field could only be estimated, but having gathered nearly all the corn, and shelled and weighed nearly three thousand bushels, Dunn would certainly be in a better position to know the actual amount of corn than any person who should merely estimate it in the field; and as the Supreme Court say the accounts of the appellant must be looked upon as having been honestly rendered, we feel that the master has largely overestimated the amount of the corn raised. Concerning the oats there is no dispute either as to quantity or price. We are not disposed to find fault with the charge of hay or wheat, made by the master. The price per bushel received for the corn sold, 38 cents, is correct. As to the balance, the price, the average price of the corn about the time it was being fed to appellant's stock would seem to be the proper rule.

The point made that the special master was a partner of one of the attorneys of the appellee, and hence interested and not qualified to act as master in the case, need not be decided, as the case will be reversed on other grounds, and when the case is again referred, it can be sent to the regular master, or some special master not at all interested or prejudiced. For the reasons above indicated, the decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.