KATHARINE B. HOTCHKISS *et al.*

*v.*

NORWOOD PARK BUILDING, LOAN AND HOMESTEAD ASS'N.

*Opinion filed October 23, 1907.*

1. LOAN ASSOCIATIONS—*loan in accordance with Homestead Association act is not usurious.* A loan made in accordance with the provisions of the Homestead Loan Association act is, in effect, an advancement to the stockholder until the stock has reached par value, and a provision requiring a stockholder to pay his stock dues and interest in monthly installments until the stock reaches par, at which time he has the right to have his note canceled and returned and the mortgage released, is not usurious.

2. SAME—*when language of a bond does not render transaction usurious.* Monthly payments by a borrower upon his stock, which are required to be made by the statute and the by-laws of the association, are not payments upon the loan such as, respectively, reduce the amount of the principal and require corresponding reduction of the interest payments in order to avoid the taint of usury, even though the bond given by the borrower states that the "principal sum" shall be paid in monthly installments until it shall be fully paid or the stock shall have attained its par value.

3. SAME—*effect of amendments of 1897 and 1899 to Homestead Loan Association act.* Section 6b of the act of 1897, (Laws of 1897, p. 168,) concerning voluntary withdrawals of stock by shareholders, and section 6c of the act of 1899, (Laws of 1899, p. 114,)

concerning re-payment of loans by borrowers, upon notice, before maturity, do not impair the rights of parties under previous contracts, but give a remedy under both previous and subsequent contracts if the shareholder or borrower desires to avail himself of it.

4. SAME—*minutes of a meeting need not show there was competitive bidding.*   The fact that the minutes of a meeting, which were made by the secretary of a loan association, do not state that the preference for a loan was offered to open competition is not conclusive that such preference was not procured by competitive bidding, and the omission may be supplied by oral testimony as to that fact, provided it does not contradict the minutes.

5. SAME—*what does not render transaction usurious.*   'The fact that only one bid was made for a preference, and that by the secretary of the loan association by direction of the proposed borrower, does not render the transaction usurious, provided the preference was offered in open meeting to the highest bidder and an opportunity to bid given to all persons desiring to do so; nor does the fact that the secretary made but one bid show a fraudulent practice of the association to loan only at that bid.

6. SAME—*party must establish defense of usury by a preponderance of the evidence.*   One who raises the defense of usury to a foreclosure proceeding by a loan association must establish, by a preponderance of the evidence, that the particular loan, and not other loans to other persons, was usurious.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

Appellee filed its bill in the circuit court of Cook county to foreclose two mortgages.   The bill alleged that Freeland E. Hotchkiss, at the date of the execution of the first mortgage, was a member of the appellee and the owner of fifty shares of stock in appellee association; that said Hotchkiss borrowed $5000 from appellee and executed to it a bond in the sum of $10,000, conditioned that he, his heirs, executors, administrators and assigns, would pay to appellee "the said sum of $5000 in monthly installments of $25 each, on the 15th day of each and every month from October 1, 1892, (the date of said series,) with interest thereon at the rate of seven per cent per annum, payable in monthly install-

ments of $29.17 each, on the 15th day of each and every month after date until the said principal sum shall have been fully paid or until the shares of said series shall have attained the value of $100 each, and shall pay the sum of $1531.25, (being unpaid premium,) in monthly installments of $18.23 each, on the 15th day of each and every month, beginning with the 15th day of October, 1893, and continuing until said unpaid premium is fully paid," and all fines on stock, taxes and assessments levied against the property mortgaged to secure payment of the sum named. To secure the payments mentioned in the bond, Hotchkiss and his wife executed to appellee a mortgage on the northerly half of lot 774, in block 5, in the third division of Riverside, Cook county, Illinois. It was provided in the mortgage that in case of default for six months in the payment of any of the sums of money payable by the terms of the bond appellee might foreclose the mortgage.

The bill further alleges that on May 17, 1893, Hotchkiss owned ten other shares of stock in appellee association and on that date borrowed an additional $1000 from it, and gave a bond in the sum of $2000, which was conditioned the same as the $10,000 bond above mentioned, except that the amounts and dates of payment were different. Said $2000 bond bound the obligor to pay monthly installments of $5 on stock or principal on the 15th day of each month from April 1, 1893, and monthly interest installments on the 15th day of each month of $5.84 each, which was at the rate of seven per cent per annum, until the shares of stock in the twenty-fifth series should attain the value of $100 each, and also pay $306.25, (unpaid premium,) in monthly installments of $3.65 each, on the 15th day of each month, beginning with May 15, 1894. Said $2000 bond was secured by second mortgage on the same property described, executed by Hotchkiss and his wife under date of May 7, 1893, acknowledged June 17, 1893, and filed for record June 21 of the same year.

Freeland E. Hotchkiss died before the commencement of the suit, and his widow, individually and as administratrix, also his children and heirs, and others claiming to be interested in the property, were made defendants to the bill. The bill alleged that default had been made in the conditions of the bonds and mortgages in making the payments therein provided, and prayed for foreclosure. The defense set up by the answers of the widow and heirs of Freeland E. Hotchkiss was usury. The cause was referred to the master in chancery to take testimony and report his conclusions. The master found and reported that appellee was entitled to a decree of foreclosure of both mortgages, as prayed in its bill. Appellants filed objections to the master's report, which, by order of the court, stood as exceptions on the hearing before the chancellor. Said exceptions were sustained by the chancellor as to the first mortgage, and a decree was rendered that it was given to secure a usurious transaction, and directing that all sums paid as interest, premium or on stock, incident to that loan, be credited on the principal sum borrowed. The grounds upon which the defense of usury was sustained as to the first mortgage were, that the preference for the loan was granted at a special meeting of the board of directors instead of at a regular meeting upon competitive bids, as required by law. Appellants' exceptions were overruled as to the second mortgage, which the chancellor held was not usurious, and a decree was entered for its foreclosure, as prayed in the bill. From that part of the decree holding that the $1000 loan was not usurious and directing a foreclosure for the amount claimed to be due by appellee, appellants appealed to the Appellate Court for the First District. No cross-errors were assigned by appellee, and the only question raised by the appeal was as to the correctness of the decree of the circuit court in holding that the $1000 loan was not a usurious transaction. The Appellate Court affirmed the decree of the circuit court, and appellants have prosecuted a further appeal to this court.

Appellants' counsel say the defense of usury is based upon the two following grounds:

*First*—Because the principal sum of $1000 was payable, by the express terms of the bond and mortgage, in monthly installments of $5 each, with interest on said principal sum at the rate of $5.84 per month until said principal sum was fully paid; that the sum of $5 of alleged stock payments was a payment on the principal sum mentioned in said money bond; that said sum of $5.84 per month as interest was a greater rate of interest than eight per cent per annum provided in the by-laws of the association and a greater rate of interest than was allowed by law for the use of money. It is further stated that no stock had been issued at the time of making said bond, and was only ostensibly issued thereafter as a part of the fraudulent scheme to collect usurious interest.

*Second*—That said alleged premium of $350 was not determined by free, open competition, as provided by the by-laws of the association and the statute of the State of Illinois, but was determined by private contract pursuant to a general fraudulent scheme of said association, whereby it had, for a long time prior and subsequent to the making of said loan, exacted a pretended premium imposed by the association; that the issuing of the stock was a part of the general fraudulent scheme to collect usurious interest from members and non-members of said association.

FREDERICK MAINS, and FRANK F. REED, for appellants.

WILLIAM T. UNDERWOOD, and ROSCOE L. ROBERTS, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

It is contended that the provision of the bond for the payment of the $1000 in monthly installments of $5 each, and the payment of seven per cent interest on the principal

sum of $1000 in monthly installments of $5.84 each, made
the transaction usurious, for the reason that every monthly
payment of $5 dues on stock should be credited upon the
principal of the loan, thereby reducing it to that extent every
month, and the continuation of the interest payments at the
rate of $5.84 per month was in excess of the rate allowed by
law.   It is contended, even if a loan made in accordance
with the Homestead Loan Association act is not usurious,
this loan was not made in accordance with the requirements
of that act, in that the stock dues of $5 per month are to
be applied upon the principal of the loan and not upon stock,
and the contract is therefore usurious.

This court held in *Holmes* v. *Smythe*, 100 Ill. 413, that
a loan made in accordance with the provisions of the Home-
stead Loan Association act was, in effect, an advancement
to the stockholder until his stock reached par value, and that
requiring the borrowing stockholder to pay his stock dues
and interest in monthly installments until the stock reached
par, at which time he had the right to have his note can-
celed and returned and his mortgage released, was not usu-
rious.   This case has been approved in subsequent cases
of this court, so that it is not open to question in this State
whether a loan made in accordance with the law is usurious.
It is true, here the bond recited that the principal sum of
$1000 should be paid in monthly installments of $5 each,
"until the said principal sum shall have been fully paid or
until the shares of said series shall have attained the value
of $100 each."   The law authorizes a subscriber to stock in
a homestead loan association to pay it up in installments,
in the manner required by the association.   Appellee's char-
ter and by-laws required subscribers to its capital stock to
pay it up in installments at the rate of fifty cents per month
for each share, and the monthly payments of $5 mentioned
in Hotchkiss' bond were payments upon his stock dues on
his ten shares of stock, notwithstanding the language used
in the bond.   The bond required these payments to be made

until the loan was paid, "or until the shares of said series shall have attained the value of $100 each." Hotchkiss then became bound to pay appellee $5 dues each month on said ten shares of stock until it reached par value, and this he was obligated to do whether he was a borrower or not. When he obtained a loan or advance on his stock until such time as the payments made thereon would mature the stock, he secured the payment of his stock installments by the bond and mortgage.

In 1897 the legislature passed section 6*b* of chapter 32, (Hurd's Stat. 1905, p. 519,) which provided for the withdrawal by a member of a homestead loan association of his shares of stock, whether they had been pledged as security for an advance or not. In 1899 section 6*c* was passed. That section, in part, reads as follows: "Any member who shall have obtained a loan or advance on his shares, and who shall have given real estate as security may, at any time, upon giving thirty days' previous notice in writing, re-pay the same. On settlement such member shall be charged with the full amount of such loan or advance, together with any and all arrearages due thereon, or on the shares pledged or appertaining to the security given, and shall thereupon be allowed as a credit the withdrawal value of the shares pledged as security, together with such other credits as may be returnable on account thereof, and the balance shall be received by the association in full settlement and discharge of such loan or advance." Before the passage of these acts there was no law requiring associations of the character of appellee to allow a stockholder to withdraw his stock before its maturity, or a stockholder to whom an advance had been made to re-pay the advance before the maturity of his stock. These sections did not impair the rights of parties under contracts made before they went into effect, but they provided a remedy under contracts existing before their adoption as well as contracts made afterwards. (*Williams* v. *Waldo,* 3 Scam. 264; *Templeton* v. *Horne,* 82 Ill. 491;

*Dobbins* v. *Bank,* 112 id. 553; Wade on Retroactive Law, secs. 221, 222.) No additional sum beyond what was authorized by law was required to be paid by Hotchkiss, and the meaning and intent of his contract was that he would pay the dues monthly on his stock and the interest in monthly installments on the advance made him until such time as his stock became worth $100 per share, and he was not entitled to have the stock dues paid by him credited on the principal of the loan or advance made to him, thereby reducing his indebtedness to the extent of each monthly payment. Section 6c, above referred to, gave him the right to pay the advance made him before the maturity of his stock, if he so desired, by complying with the provisions of that section.

Appellee had no by-laws dispensing with offering its money for bids in open meeting and fixing a rate of interest and premium at which it would loan its money, in accordance with section 8 of chapter 32, (Hurd's Stat. 1905, p. 521,) and it is contended by appellants that the premium agreed to be paid by Hotchkiss was not determined by offering the money in free and open competition, but was determined by private agreement, in pursuance of a general fraudulent scheme of appellee. The first witness offered by appellants to sustain this proposition was F. D. Stevers, secretary of appellee. His minutes of the meeting of May 16, 1893, relating to the Hotchkiss loan, read as follows: "F. E. Hotchkiss applied for additional loan of $1000 on lot 774, block 5, third division of Riverside, at a premium of thirty-five per cent; motion to accept application carried; adjourned.—F. D. Stevers, Secretary." The minutes of the meeting of the board of directors held June 27, 1893, contained the following relating to the Hotchkiss loan: "The committee on loan of F. E. Hotchkiss of $1000 reported making loan; motion to accept report and grant the loan; carried; adjourned.—F. D. Stevers, Secretary." The minutes of the meeting of May 16, 1893, show that

Allen B. Smith applied for an additional loan of $600, and that a motion to accept the application and grant the loan was carried. Henry Snyder, Sr., made application for an additional loan of $600, and the motion that it be accepted on condition that an unpaid balance due on his abstract, also the cost of continuing the abstract, be deducted from the loan, was carried. Also James H. Boyle made application for a loan of $1800 at a premium of thirty-five per cent, and offered certain lots in Edison Park as security therefor. A motion to accept the application was carried and a committee selected to approve the security. The minutes do not show whether Smith and Snyder bid any premiums for their loans or not. The minutes of June 27, 1893, show that the committee on the loans to Boyle and Snyder reported on them and motions to grant the loans were made and carried. Stevers testified the minutes did not contain everything that transpired; that he recorded only such things as he thought necessary to make matters of record. He testified Smith appeared at the meeting and bid thirty-five per cent premium, and that the matter was gone over thoroughly between him and the directors. He further testified Hotchkiss was not present at either of the meetings at which he bid for the preference of a loan, but that he authorized him (Stevers) to bid for him. He was not sure whether his authority to bid for a loan at the meeting May 16, 1893, was in writing or not. He testified Hotchkiss authorized him to bid thirty-five per cent for an additional loan for him of $1000, upon the same security given for the first loan; that he did make the bid at that meeting for Hotchkiss, and the preference was awarded him and the matter referred to a committee. The witness testified he did not think he offered thirty-five per cent premium on his first bid; that his recollection was that his first bid was less than that. Stevers testified that appellee's method of making loans was as follows: When the premium a prospective borrower would give for a preference was announced at a

meeting, the chairman of the meeting would then ask if there were any others who wished to bid; that this was asked in the presence of everybody present, and that the bid for Hotchkiss for the preference for the $1000 loan was put before the meeting and handled in the same manner as was done in all other cases. Charles Snyder, a son of the Snyder who applied for an additional loan of $600 at the meeting held May 16, 1893, testified he was present at that meeting, and that his father, Mr. Smith and Mr. Boyle were also present. He testified the president of the board asked the secretary if there were any applications for loans; that the secretary read applications of Smith, Boyle, witness' father and Hotchkiss, and that they were acted upon in the order read, one at a time. On direct examination he does not testify that any bids were made by or for anyone for the preference of a loan. On cross-examination he stated he did not know whether anyone bid a premium for Mr. Hotchkiss or not. Boyle testified he was present at the meeting May 16, 1893, and that there was no competitive bidding by himself or anyone else. But we think it more than probable that Mr. Boyle was mistaken as to the date of the meeting at which he was present, and that he was present at the meeting in June instead of in May. Three other witnesses testified they had secured loans through the secretary or some director, and that the premiums were fixed without competitive bidding. It was further proven by the records of appellee that at fourteen meetings, from July, 1891, to May, 1893, certainly thirteen, and possibly fifteen, loans were made at thirty-five per cent premium; four, or possibly six, no rate of premium mentioned; two at thirty per cent and four at twenty-five per cent; and from the fact that the majority of these loans were made at thirty-five per cent premium, it is argued this tends to show that it was the practice of appellee to consider a request for a preference or loan as a bid of thirty-five per cent premium. It is apparent that a bid for a preference and an application for a

loan or advance were not the same thing. The application signed by Hotchkiss bears the heading, "Application for advance," and reads:

"*To the Board of Directors of the Norwood Park Building, Loan and Homestead Association of Norwood Park, Ill.:*

"GENTLEMEN—At a regular meeting of your board held May 17, 1893, having obtained the preference for an advance on ten shares of the twenty-fifth series of the stock of your corporation at a premium of thirty-five per cent, I now offer you as security therefor the following property," etc.

While it bore no date, it is evident from the way the application reads that it was executed after the preference for the advance had been obtained. Stevers testified this was the regular method of doing business, and that applications for a preference, or to bid for a preference, were seldom or never in writing. He testified he had no application in writing for persons who secured preferences for advances at the meeting of May 16, 1893, and it would seem from all the evidence that if he read anything at that meeting it was not applications for loans, as testified to by Boyle and Snyder. It is furthermore to be borne in mind that eleven years had elapsed between the meeting in May, 1893, and the time the witnesses testified. Snyder and Boyle were not present at that meeting to represent Hotchkiss nor for the purpose of observing what was done with reference to his loan. It is a matter proper to be considered whether their memories would be as good concerning all that occurred there as the memory of the secretary of the association. The fact that the minutes of the meeting made by the secretary of appellee do not state that the preference was offered to open competition is not conclusive that such preference was not procured by competitive bidding. Omissions in minutes of this character may be supplied by oral testimony where the oral testimony does not contradict the minutes. Endlich on Building and Loan Associations, par. 185; *Lurton v. Jacksonville Loan and Building Ass.* 87 Ill. App. 395. That case was affirmed by this court in 187 Ill. 141, though that point is not mentioned in the opinion.

The minutes of May 16, 1893, state that Hotchkiss applied for an additional loan of $1000 at a premium of thirty-five per cent. This is not inconsistent with Stevers' testimony that Hotchkiss authorized him to bid that much for the loan or preference in order to secure it. Neither does it necessarily follow that if Stevers bid that rate of premium at his first bid it proved a fraudulent purpose or practice of the association to loan only at thirty-five per cent premium. This loan was made during the year of the world's fair at Chicago, and Stevers testified the premium rate for money was high on all transactions of that kind and that it was almost impossible for suburban property owners to get loans. As we have before stated, he testified his best recollection was that he did not name thirty-five per cent as his first bid; but if he did bid thirty-five per cent at the first bid made by him and no one else bid against him, this of itself would not render the transaction fraudulent, unlawful and usurious. If the preference was offered in open meeting to the highest bidder and opportunity given to all persons desiring to do so to bid, this was a compliance with the law, and the fact that only one person made a bid would not render the transaction usurious, as having been made contrary to law. (*Home Building and Loan Ass.* v. *McKay,* 217 Ill. 551.) If it be conceded that some stockholders did procure advances at meetings where competitive bidding was not permitted this would not affect the Hotchkiss loan, if it was made in the manner required by law. It was incumbent upon appellants to establish their defense of usury by a preponderance of the evidence. (*Mosier* v. *Norton,* 83 Ill. 519; *Boylston* v. *Bain,* 90 id. 283.) The trial and Appellate Courts having found that this defense was not proven, we cannot say such finding was so palpably contrary to the weight of the evidence that the decree was erroneous and that the Appellate Court erred in affirming it.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*