JOHN F. STEWART *et al.*

*v.*

HENRY M. METCALF.

1. SPECIFIC PERFORMANCE—*default of vendee in collateral undertaking.* The default of a purchaser of land in the performance of a separate contract, though collateral to the contract sought to be enforced, and entered into at the same time, and having relation to the same subject matter, will be no bar to a bill to specifically enforce the contract of sale.

2. So, where a party sold a tract for $600, $300 of which was acknowledged to have been paid in the vendor's written agreement to convey, upon payment by the vendee of two notes of the vendor to a third party, amounting to $300, and it appeared that $200 of the sum recited as paid, was the price of a town lot, to be conveyed by the vendee to the vendor, which was refused by the former on the ground of there being other indebtedness of the vendor which was a lien upon the land sold, and thereupon a new arrangement was entered into by which the vendor gave the vendee his notes for the amount of such indebtedness, and received from him a separate obligation to convey the town lot upon payment of these last notes, it was *held,* on bill for specific performance as to the land, by parties succeeding to the vendee's equities, that it was not proper to require them to pay the price of the town lot which the vendee had failed to convey, with interest on the same.

3. Estoppel—*by recitals in contract.* In the absence of fraud, a party to a written contract will be estopped from averring anything against the deliberate recitals and admissions contained in the same, especially when it will prejudice and work injury to others who have acted in good faith upon the belief of the facts as stated in such contract.

4. Thus, where a vendor of land gave the vendee a written contract reciting the sale, the payment in hand of $300, and agreeing to convey the land upon the vendee's payment of the further sum of $300, in two notes of the vendor, then in the hands of third parties, and the vendee transferred his rights under the contract to an innocent purchaser, whom he put in possession, and who paid the notes of the vendor according to the original contract, it was *held,* on bill for specific performance of the contract by the heirs at law of the last purchaser, and assignee of a part of such heirs, that the vendor was estopped from denying the payment to him of the $300 recited as paid in his contract, as other rights had been acquired on the faith of such recital.

Appeal from the Circuit Court of Pope county; the Hon. David J. Baker, Judge, presiding.

This was a bill in chancery, by John F. Stewart and others, against Henry M. Metcalf, for the specific performance of a written contract of the defendant for the sale and conveyance of a tract of land to Willis C. Piles. Piles sold the land to Amos Sawyer, who performed the conditions named in the written contract to entitle him to a deed. After his death, John F. Stewart bought the interest of a portion of his heirs, and he and the other heirs filed this bill.

Messrs. Green & Gilbert, for the appellants.

Mr. Wesley Sloan, for the appellee.

Mr. Justice Scholfield delivered the opinion of the Court:

This suit was instituted in the court below by the appellants, for the purpose of enforcing the specific performance of a contract to convey a certain tract of land.

It appears from the record that the contract sought to be enforced was evidenced by an instrument in writing, under seal, which was executed by appellee to one W. C. Piles; that

Piles subsequently sold the land and executed his bond to convey the same to one Amos Sawyer, who was deceased before the commencement of this suit. The appellant Stewart claims as purchaser from two of his heirs at law, and the other appellants claim as his heirs at law.

The defense interposed on the trial in the court below, was, that the contract had not been performed, in this: that a part of the consideration was. that Piles agreed to convey to appellee a town lot near Keokuk, Iowa, which was considered and treated as a payment of $200 on the price to be paid for the land, and that Piles had refused to make the conveyance.

The court decreed that appellants should pay to appellee $360, being the estimated price of the lot at the time the contract was made, with the interest which had accrued thereon at the time the decree was rendered.

The only question now before us relates to the correctness of this decree.

The writing executed by appellee to Piles, acknowledges the payment, at the time, of $300, and concludes in these words: "The said Piles assumes the payment of the two notes, (alluding to two notes given by appellee to one Lewis Thomas,) which will be in full payment of said land, and when said Piles pays the two notes above described, then I agree and bind myself to make him a deed to said lands," etc. It appears that after this contract was concluded, and, probably, before the parties had separated, Piles refused to convey the town lot to appellee for the reason that appellee had given a certain other note to Lewis Thomas for $150, which had been assigned to, and was then held by, one Simpson, and which was a lien upon the land; and, also, that one Fretz held a mortgage upon the land to secure the payment of $125. It was then agreed between them that appellee should execute to Piles his two promissory notes, payable in thirty and sixty days, and that Piles should convey to him

the town lot upon his paying the notes. The notes were accordingly executed, and appellee took from Piles an instrument in writing, as follows:

"I have this day sold to Henry M. Metcalf one town lot, situated near Keokuk. I bought the said lot from W. C. Hodge, and it is the only lot or land I ever bought of said Hodge. The said Metcalf has this day executed to me his notes for the sum of $300, and when he pays said notes I am to make him a deed.

Dec. 30, 1858.                  W. C. PILES."

It is not claimed that Amos Sawyer, when he purchased from Piles, had knowledge in fact of the transaction in regard to the town lot. Piles was in the actual possession of the land, and he, and those claiming in his right, have retained it ever since.

It is argued that Sawyer, being the purchaser of a mere equity, is chargeable with knowledge of all that occurred between appellee and Piles; that the failure of Piles to convey the town lot, is, to the extent of its estimated value, a failure in the consideration of the contract to convey the land, and that appellee should not be compelled to convey until this amount is paid to him.

This position, however correct it might be under a different state of facts, is not correct when applied to the facts disclosed by this record.

The instrument executed by appellee to Piles, acknowledges the payment of $300, and obligates appellee to make him a deed for the land upon the payment of the two Lewis Thomas notes. The subsequent agreement, in regard to the conveyance of the lot near Keokuk, took that property out of the original contract and made its conveyance to depend upon other and entirely different conditions. In this agreement, it is assumed by the parties that Piles would have to pay the Simpson note and the Fretz mortgage to relieve the land from incumbrances. Although appellee was primarily liable for the payment of these incumbrances, yet the fact that

they might be enforced against the land to the injury of
Piles, formed a sufficient consideration to support the agree-
ment. The parties were capable to contract with each other.
No undue influence is shown, nor does it appear that there
was any fraud, unless fraud shall be inferred from the mere
fact of non-performance, which has not been and can not be
claimed. We are, therefore, of opinion, that this was a valid
and independent agreement, capable of being enforced by
itself without reference to the original contract. The deed
for the lot was to be made upon the payment of appellee's
notes. The acts were to be concurrent. If the deed was not
executed and tendered to appellee, as the notes were not as-
signed before maturity, he should not have paid the notes ;
but, in any event, for a failure to deliver the deed in accord-
ance with the terms of the agreement, appellee's remedy
would have been upon this agreement and not upon the orig-
inal one.

It is said in Fry on Specific Performance of Contracts,
372, sec. 617, "Where that, on the non-performance of which,
by the plaintiff, the defendant relies, is, in its nature, a col-
lateral and separate contract, or is part of, or referable to
such a contract, though between the same parties and en-
tered into at the same time, and having relation to the same
subject matter as the contract which the plaintiff seeks to
enforce, the court will not consider the default by the plain-
tiff, in respect of the one contract, as any bar to a specific
performance.of the other, though such default may give him
a cross right of action or suit."

But we think, moreover, that aside from this objection to
the position contended for by the counsel, appellee is, under
all the circumstances, estopped from insisting upon his failure
to receive a deed for the town lot near Keokuk, as a defense
to this suit.

He voluntarily placed Piles in the possession of the land,
and gave into his hands an instrument in writing, signed and
sealed by him, obligating himself to convey the land to Piles

8—68TH ILL.

when the two notes therein described should be paid. It is true, as is argued, that it is competent, in general, to show by parol evidence that the consideration in an instrument of this character is not correctly expressed, but it has never been held competent, by this kind of evidence, to contradict or vary the terms or conditions of the instrument. When Sawyer, therefore, found Piles in possession of this property, he was, in the absence of knowledge to the contrary, justified in believing that this instrument truly expressed the terms upon which appellee's deed to the land could be obtained. That he took possession of the land in good faith is not questioned, and it is evident that appellee knew he was acting upon the belief that, when the two notes were paid, Piles would be entitled to a deed. Sawyer paid these notes, and, as the court below found, and we think not improperly, the Simpson note also. It does not appear that, with the exception of two years that appellee was in the army, he has ever been far away from the land, yet he never notified, or in any manner gave any warning to Sawyer of this claim, but permitted him to complete the payments, and, after his death, for the first time seeks to urge the claim against his heirs at law. If he had intended to hold Sawyer responsible for the default of Piles in respect of the lot, he should have given him timely notice, that he might have protected himself.

In *Wynkoop* v. *Cowing et al.* 21 Ill. 584, it was said: "Although it be true that courts will not be estopped from looking into all the facts and circumstances, by a deed absolute on its face, to ascertain whether a loan of and security for money was really intended, yet, if there be no fraud or circumvention in procuring it, parties must be bound by and be estopped from averring anything against their own deliberate recitals, admissions and agreements, especially when such averments would prejudice and work injury to others who have acted in good faith upon the existing or supposed state of facts, in such manner as to work wrong and injury, to be now overturned."

The principle applies to this case with peculiar force. It is in proof that appellee admitted that Sawyer was not to blame for the injury he claimed to have suffered from Piles; that he had acted in good faith, and his widow or heirs were entitled to a deed. It would be a violation of the clearest principles of justice to allow his claim to be enforced at this late day, even if he had not, by his last contract with Piles, accepted his individual obligation for a deed in lieu of any claim which he might otherwise have retained on the land. We know of no principle of equity upon which a secret lien of this character can be made available after so great a length of time, when the rights of innocent parties have intervened.

The decree of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*