# W. K. Sullivan, Receiver of the American Building, Loan and Investment Society, v. Henry Spaniol et al.

1.  CONTRACTS—*When the Law Forms a Part of—Construction.*—The law under which a contract is made enters into and forms a part of the contract as effectually as if written therein.

2.  SAME—*Construction—Intention of the Parties.*—In the construction of a contract all the facts and circumstances surrounding the parties, so far as can be ascertained from the contract itself, may be considered in ascertaining and giving effect to the intention of the parties to the contract at the time of entering into its terms.

3.  SAME—*Construction of, in Equity—Matters of Form, Intent and Purpose.*—In a suit in chancery the chancellor may brush aside and disregard mere matters of form, and look into the depths of the transaction of the parties to ascertain their real intent and purpose, and when discovered to give effect to such intention.

4.  SAME—*Illegal Stipulations.*—If provisions or stipulations are found in the contract which are apparently illegal, or inconsistent with the law, they will be harmonized or disregarded, if possible to do so.

5.  HOMESTEAD AND LOAN ASSOCIATIONS—*Obligations of Members.*— When a person becomes a member of a homestead loan association he is a constituent part thereof, and is bound by all its acts as effectually as if performed by himself, because the officers of the association were his agents, as well as that of all other shareholders.   He is first above all things else bound by the law; and if by-laws, contracts or stipulations are made by the association inconsistent with the law, he can gain no advantage therefrom, otherwise he would be permitted to take advantage of his own wrong.

6.  SAME—*Obligations Under the Statute.*—The obligation of a member under the statute is that he shall make periodical payments upon his subscription of stock until such payments, together with the earnings of the association, equal the full face value of his shares.

7.  SAME—*Members Not Relieved from Their Obligations by the By-Laws.*—No by-law or agreement of a homestead loan association providing that the shares shall mature within six and one-half years, or

any other fixed period, will avail to relieve a member from the statutory obligation to make his periodical payments upon his subscription.

8. SAME—*By-Laws Maturing Shares in a Fixed Period, Illegal.*— A by-law of a homestead loan association providing that the shares shall mature within six and one-half years, or any other fixed period, is inconsistent with the statute under which such an association has its existence, and antagonistic to the legal purposes and plans of such organizations, and not enforceable as a contract.

9. SAME—*Mortgages to Secure Payment of Installments upon Shares of Stock.*—The obligation to pay the installments due upon shares of stock is the primary object of the parties, and the purpose and intent of the usual mortgage by a member is to secure such payment as well as the interest on advancements, in consideration of the advancement of the face value of the stock.

10. SAME—*In Insolvency.*—If a homestead loan association is at fault in precipitating insolvency, in the consequent proceedings for a receiver and winding up of its business, each member is equally involved in such fault with the other members of the association, for the officers are as much his agents as they are of the others, and the member is therefore not in a position to complain on that ground, or to thereby escape the legal effect of his contract.

11. SAME—*Insolvency. Common Misfortune, Equity, Equality and Justice to All.*—Equity, in view of the common misfortune of all the members of a homestead loan association in consequence of its insolvency, will adopt the rule of equality and justice to all.

12. SAME—*Abandonment of Contracts, Insolvency.*—By the voluntary act of the directors of a homestead loan association, manifested by their resolution to discontinue business, and to apply for the appointment of a receiver, the further continuance and performance of the contracts of the society is abandoned, and equity requires that each member be restored as equally near to his condition before membership as the nature of the case will permit.

13. SAME—*Accounting and Winding Up of Its Affairs.*—Rules Relating to Partnership Applied.—No reason is apparent why the general rules applicable to the settlement of a partnership between its members should not be applied to the settlement of the affairs of a homestead loan association. Where one partner has received more than his share of the assets, he is so charged in the accounting. In the settlement of the affairs of a homestead loan association this can only be done by requiring each borrowing member to restore the money advanced to him, and also to perform his primary contract by paying the installments of his subscription, as must all other members not receiving advances, and as a partner who had not paid his share of capital stock would be required to do.

14. SAME—*Liens upon Mortgaged Premises for Balances on Accounting.*—The mortgage is given to secure any balance on accounting, in consideration of the advancement to him by the society, and therefore the association is entitled to a lien upon the mortgaged

Sullivan v. Spaniol.

premises for any such balance, upon a fair and equitable accounting, which may be due to it.

15. SAME—*Rule for Accounting.*—Members of an insolvent association, upon an accounting, are chargeable with the amount of money actually received by them, with legal interest thereon from the time it was received, and are entitled to credit for all interest paid, and are chargeable with so much of the premiums as was earned at the time the society passed into the possession of the receiver, estimating the life of the loan as eight years.

**Bill for Foreclosure, Cross-Bill, etc.**—Trial in the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding. Hearing and bill dismissed for want of equity. Complainant appeals. Heard in this court at the May term, 1898. Reversed and remanded. Opinion filed September 26, 1898.

COLLINS & FLETCHER and WILLIAM D. FULLERTON, attorneys for appellant.

The general nature of a building and loan society. State v. Redwood Falls Building, etc., Association, 45 Minn. 154; Ninth annual report of the U. S. Commissioner of Labor (1893), p. 12; Thompson on Building Associations, Secs. 2 and 3; Am. and Eng. Ency. Law, second edition, Vol. 4, p. 1003; Endlich on Building Associations, second edition, Secs. 461, 12, 329, 331, 332, 333, 45, 55, 63 (and note 1, page 53), 67 122, 124, 125 (and note 4), 141, 142, 13, 123; King v. International Bldg. Union, 170 Ill. 140; Towle v. The American Building, Loan and Investment Society, 61 Fed. Rep. 446; Towle v. The American Building, Loan and Investment Society, 60 Fed. Rep. 131; In re Doncaster Permanent Building Association, L. R. Equity Cases, Vol. 4, 1867; Mechanics' Building and Loan Ass'n v. Conover, 14 N. J. Eq. 219.

The insolvency of a building and loan association renders its mortgages enforceable at once by the receiver, regardless of their terms of payment, for the purpose of winding up the affairs of the association. Endlich on Building Associations, 2d Ed., Sec. 523; Towle v. The American Building, Loan and Investment Society, 61 Fed. Rep. 446; Curtis v. Granite State Provident Assn. (Conn.), 36 Atl. Rep. 1023; Wier v. Granite State Provident Assn. (N. J.), 38

Atl. Rep. 642; Rogers v. Raines (Ky.), 38 S. W. Rep. 483; Rogers v. Hargo (Tenn.), 20 S. W. Rep. 430; Strohen v. Assn. (Pa.), 8 Atl. Rep. 843; Twin Cities Nat'l Bldg. and Loan Assn. v. Lepore, 17 Pa. County Rep. 126; Knutson v. Assn. (Minn), 69 N. W. Rep. 889; Post v. Assn. (Tenn.), 37 S. W. Rep. 216; Choisser v. Young, 69 Ill. App. 252; Brown v. Archer, 62 Mo. App. 277.

The proper rule of stating an account between a borrowing stockholder and a receiver of an insolvent building and loan association. Strohen v. Assn. (Pa.), 8 Atl. Rep. 843; Rogers v. Hargo (Tenn.), 20 S. W. Rep. 430; Endlich on Building Associations, 2d Ed., Sec. 531; Post v. Mechanics' Bldg. and Loan Assn. (Tenn.), 37 S. W. Rep. 216; Weir v. Granite State Provident Assn. (N. J.), 38 Atl. Rep. 643; Knutson v. Building Assn. (Minn.), 69 N. W. Rep. 889; Curtis v. Association (Conn.), 36 Atl. Rep. 1023; Rogers v. Raines (Ky.), 38 S. W. Rep. 485; Brown v. Archer, 62 Mo. App. 277; Twin Cities Nat'l Bldg. and Loan Assn. v. Lepore, 17 Pa. County Court Rep. 426; Price v. Kendall (Tex.), 36 S. W. Rep. 810; State Savings and Loan Assn. v. Carroll, 15 Pa. County Court Rep. 522; Choisser v. Young, 69 Ill. App. 252; Towle v. The American Building, Loan and Investment Society, 61 Fed. Rep. 446; National Saving Fund and Building Assn. v. Robinson, 19 Phila. 358.

There is a balance due from the appellee Henry Spaniol to the appellant, as representative of the insolvent society, and the mortgage or trust deed executed by appellees is security for such balance. King v. International B., L. & I. Union, 170 Ill. 140; Starr & Curtis' Ann. Ill. Stat. (2d Edition), 1896, Chap. 32, Secs. 113 and 115; Endlich, Building Associations (2d Edition), Secs. 127, 13, 88, 523, 80, 129, 133, 142, 333, 380, 443; In re Doncaster Permanent Bldg. Assn., L. R., Equity Cases, Vol. 4, 1867; Curtis v. Granite State Provident Assn. (Conn.), 36 Atl. 1023; Weir v. Granite State Provident Assn. (N. J.), 38 Atl. 1644; Rogers v. Raines (Ky.), 38 S. W. 484; Strohen v. Association (Pa.), 8 Atl. 843; Rogers v. Hargo (Tenn.), 20 S. W. 430; Post v. Mechanics' Bldg. & Loan Assn. (Tenn.), 37 S. W. 216; Nat'l Savings

Fund and Bldg. Assn. v. Robinson, 19 Phila. 358; Sullivan v. Stuckey (decided by U. S. Cir. Court, Dist. of Ind., April 9, 1898, but not yet reported). Pomeroy's Equity Jurisprudence, Vol. 3, Secs. 1235, 1237; note 2, p. 235; note on page 236; Vol. 1, note 2, p. 408, Secs. 405, 420; Jones on Liens, Vol. 1, Secs. 27, 28, 77; Jones on Mortgages (2d Ed.), Chap. 5, Secs. 162, 165, 167, 168; Peckham v. Haddock, 36 Ill. 40.

REEVES & BOYS, attorneys for appellees, contended that a trust deed or mortgage given to a building and loan society does not stand as security for the payment of dues, fines or assessments without an express agreement to that effect. Bowen v. Lincoln B. & L. Assn. (N. J. Dec. 1893); 46 Am. & Eng. Corp. Cases, 503; Interstate Savings & Loan Assn. v. Cairns, 16 Wash. 215; Fagan v. People's Savings & Loan Assn., 55 Minn. 437; Thompson on B. & L. Ass'ns, p. 128; Wohlford v. Citizens B. & Loan Assn. (Ind.), 40 N. E. Rep. 694; Cummings v. Citizens B. & L. Assn. (Ind.), 42 N. E. Rep. 213; 4 A. & E. Ency. (2d Ed.), p. 1039.

A building and loan association is responsible for the false or fraudulent representations of its agents. Prairie State B. & L. Assn. v. Nubling, 170 Ill. 240; Same v. Gorrie, 167 Ill. 414; Sawyer v. Menominee Loan Assn., 103 Mich. 228; Interstate Savings & Loan Assn. v. Cairns, 16 Wash. 215.

The contract is not *ultra vires*, but if it is, it is fully executed and will therefore be enforced as made. Boone on Corporations, Sec. 101; 2 Beach on Corporations, Sec. 425; 5 Thompson on Corporations, Secs. 6023, 6024, 6025; Endlich on B. & L. Ass'ns (2d Ed.), Secs. 278, 279; Kadish v. G. C. E. L. & B. Assn., 151 Ill. 531; Central B. & L. Assn. v. Lampson, 60 Minn. 422.

MR. JUSTICE WRIGHT delivered the opinion of the court.

The American Building Loan and Investment Society was incorporated November 22, 1888, under the provisions of an act of the General Assembly, entitled " An act to enable

associations of persons to become a body corporate to raise funds to be loaned only among the members of such associations," in force July 1, 1879, better known as the homestead loan association law. The capital stock was $50,000,-000, and the principal office at Chicago. The appellee, Henry Spaniol, purchased twelve shares, at the par value of $100 each, of the stock of the society, for which a certificate thereof was issued to him March 1, 1890, having printed thereon a copy of the by-laws of the society, the two combined constituting the contract. The stipulation of the certificate stated it was issued and accepted upon the terms and conditions that the shareholder was to pay, or cause to be paid, a monthly installment of seventy-five cents on each share of the stock during the continuance of the contract, and whenever the monthly payments made on any share, together with the profits apportioned to such share, amounted to $100, the share should be deemed to have matured and no more monthly payments should be required; the society agreed to pay the shareholder $100 for each of said shares at the end of six and one-half years, according to the by-laws attached to the certificate. Neither statute nor by-laws permitted loans to other than members of the society. Spaniol obtained a preference for an advance of his twelve shares of stock at a premium of ten per cent, he agreeing to comply with the charter and by-laws of the society, and to pay five per cent premium and five per cent interest, and to give a mortgage on specified real estate. He and his wife executed a mortgage to the society March 1, 1890, to secure the sum of $1,455. This amount was composed as follows : monthly dues on twelve shares of stock for seventy-five months at seventy-five cents on each share, $675; and ten per cent premium and interest on loan payable monthly, $780, for seventy-eight months. Seventy-five notes, $19 each, were given, one payable on the last Saturday in June, 1890, and one payable on the last Saturday of each month thereafter until all were paid. For interest and premium for the month of May, 1890, and September and October, 1896, notes were given for ten dollars each,

payable on the last Saturday of each of those months. Three months' dues on stock, $27, had been paid before the mortgage was given. From advance or loan the premium of $120 was subtracted, and Spaniol received from the society $1,080 in cash. In addition to the mortgage, the certificate of the twelve shares of stock was assigned to the society as further security for the advance or loan. The by-laws of the society by the express stipulation of the mortgage are made part of the contract. By resolution of the directors of the society, December 30, 1893, application was made to the Circuit Court of the United States, Northern District of Illinois, for a receiver of the society, and thereafter it ceased doing business, the same being insolvent. A receiver was appointed to take charge of the association and wind up its business.

In November, 1893, appellees had paid forty-two of the nineteen dollar notes and the ten dollars due from May, 1890; and subsequently they have paid to the complainant, as receiver, $647, in discharge of the remaining thirty-five notes which have been surrendered to them. Two dividends of $40.50 each were declared in favor of appellee, one November 27, 1894, the other February 21, 1895. The appellant, on December 20, 1896, claiming a balance due from appellees upon the mortgage, which they refused to pay, filed the present bill for foreclosure. Appellees answered the bill, claiming they had paid the mortgage in full, denied that any balance was due thereon, and filed cross-bill praying to have the mortgage released. Issues being formed on the bill and cross-bill the cause was referred to the master to take the evidence, with directions to report his conclusions of law and fact. The master reported $526.24 still due from appellees upon the mortgage. Exceptions to this report were sustained by the court, and a finding entered that the indebtedness secured by the mortgage was fully paid before the original bill was filed, and a decree was entered dismissing the bill for want of equity. The cross-bill was also dismissed. From the decree dismissing the original bill for want of equity, appellant prosecutes this appeal, assigning such action of the court for error.

It is insisted, in support of the decree, that the mortgage was given only to secure the notes therein described, and upon the payment thereof the same was discharged and entitled to be released. This position is contested by appellant, who claims the mortgage was given to secure the payment of not only the notes described in the mortgage, but also the installments due to the shares of stock as provided by the by-laws of the society, until the same were fully paid, and the mortgage continued to be a valid and binding lien for such balance as might appear to be due thereon.

While courts of equity as well as courts of law, can not make for persons a contract different from that intended by the parties to such contract, still it is a well established and elementary tenet of equity jurisprudence, that in a suit in chancery, the chancellor may brush aside and disregard mere matters of form, and look into the depths of the transaction of the parties to ascertain their real intent and purpose; and when discovered, to give effect to such intention. It is a familiar principle that the law under which a contract is made enters into and forms a part of the contract as effectually as if written therein; and in the construction thereof all the facts and circumstances surrounding the parties, so far as can be ascertained from the contract itself, may be considered in ascertaining and giving effect to the intention of the parties to the contract, at the time of entering into its terms. If provisions or stipulations are found in the contract which are apparently illegal, or inconsistent with the law, they will be harmonized or disregarded, if possible to do so, for it will not be presumed, unless it can not be avoided, the parties intended to violate the law.

The object for which appellant society was organized is aptly expressed in the title of the act by which it was created—" to raise funds to be loaned only among the members of such association." Appellee Henry Spaniol could not, therefore, obtain a loan represented by the mortgage until he first became vested with the qualifications of membership, and by assuming all the obligations imposed upon members by the statute, and such by-laws as were authorized or per-

Sullivan v. Spaniol.

mitted by the statute. The instant he became a member of the society he was a constituent part thereof, and he became bound by all its acts, as effectually as if performed by himself, because the officers of the association were his agents as well as that of all other shareholders. He was first, above all things else, bound by the law; and if by-laws, contracts or stipulations were made by the society inconsistent with the law, he could gain no advantage therefrom, otherwise he would be permitted to take advantage of his own wrong. His first obligation, therefore, under the statute, was that he should make periodical payments upon his subscription of twelve shares of the stock of the society until such payments, together with the earnings of the society, should equal the full face value of the shares. No by-law or agreement of the society, that the shares should mature within six and one-half years, or any other fixed period, would avail to relieve him from this statutory obligation, because such would be inconsistent with the statute under which the corporation has its existence, and antagonistic to the legal purposes and plans of such organizations, and not enforcible as contracts merely. King v. International Building Loan and Investment Union, 170 Ill. 135.

Section 8 of the act in question provides that the money in the treasury shall be offered by the board of directors for loan in open meeting; and the stockholders who shall bid the highest premium for the preference or priority of loan, shall be entitled to receive a loan of one hundred dollars for each share of stock held by said stockholders, and the premium bid may be deducted from the loan in one amount, or may be paid in such proportionate amounts, or installments, and at such times during the existence of the shares of stock borrowed upon, as may be designated by the by-laws; no loan shall be made by the corporation except to its own members, nor in any sum in excess of the amount of stock held by such members borrowing; mortgage security upon real estate to be given. It seems to us from these plain requirements of the statute that the primary contract, from which there is no release save by withdrawal, is the

stock subscription, and the obligations of the shareholder to continue payment, until payments and earnings shall equal the full face value of the shares. That which the statute calls a loan to the shareholder, is in reality an anticipation of the final value of such shares after payments and earnings shall have accumulated to the full face value thereof, and the loan, so called, is but an advance on such shares to the shareholder, and is so denominated by subsequent amendments to the statute. Sec. 60, Rev. Stat., Chap. 33.

The by-laws of the society referred to are made part of the mortgage, and a covenant therein inserted imposing the obligation to duly observe and keep them. Section 14 of the by-laws requires all shareholders to pay, or cause to be paid, a monthly installment of seventy-five cents on each share named in his or her certificate, until the same shall be fully paid; said installments to be paid to the society on or before the last Saturday of each month, and without notice. It is also clear from the transaction itself, that the notes and mortgage were not given to secure a loan of money in the ordinary understanding of such business. There were seventy-eight notes, one payable each month for that number of months, which is equal to six and one-half years. Three monthly installments of $9 each had been paid before the mortgage was given. Hence three of the notes represented the ten per cent per annum interest and premium, equal to $10 per month, and the other seventy-five notes were for $19 each, being the monthly interest and premium of $10, and the monthly installment of $9 due upon the stock. It is therefore apparent from the notes and mortgage themselves, they were not given to secure $1,200 borrowed money and interest, but to secure the payment of installments due upon the shares of stock for the time estimated for them to mature and for interest on the money advanced. The notes, therefore, to the extent of the $9 monthly dues upon the shares of stock, were merely collateral to the original or primary agreement to pay upon the shares until fully paid, which latter not having been released, was inserted in the mortgage for its secu-

rity. It is true, no doubt, all parties believed, when the mortgage was given, that Spaniol's share of the earnings of the society for the seventy-eight months, the period covered by the mortgage, would produce enough more, when added to the monthly installments of $9 each, to equal the full face value of the shares. In truth the certificate contained a stipulation that at the end of that period the society would pay the shareholder $100 for each share, and it may be, had not insolvency intervened, the promise would have been fulfilled. But, as has been seen, such stipulations are not enforceable as contracts merely. King v. I. B. U., *supra*. The statute by its superior force must and does control, and so controlling prescribes the payment of installments to continue beyond the seventy-eight months limit until the full face value of the shares is reached, and such, therefore, is the contract. And here again recurring to section 14 of the by-laws, above recited, and the covenant contained in the mortgage requiring appellees to duly observe and keep the same, it is reasonable to presume the parties intended by such covenant to anticipate conditions like those now existing, by which the society is rendered incapable of longer performing its promise, which at best is collateral only in its nature, and therefore, in obedience to the mandate of the statute and the requirements of the rights of others, the original undertaking of the appellee should be resorted to as the final remedy. Not to infer this would be to render such covenant meaningless and without force, and thereby ignore the elementary rule of construction, that each part of the contract should be given effect, if consistent with other valid parts of the same. This construction is not only consistent with all other terms of the contract, but also puts the latter in harmony with the statute that gives to the society existence.

In our opinion the rational conclusion to be drawn is that the obligation to pay the installments due upon the shares of stock was the primary object of the parties, and at no time was it out of their minds, and the purposes and intent of the mortgage was to secure the payment for the shares

of stock as well as the interest on advancement, in considera-
tion of the advancement of the face value of the former.

If the society was at fault in precipitating insolvency, and
the consequent proceedings for a receiver and winding
up of its business, Spaniol is equally involved in such fault
with the other members of the society, for the officers or
managers were as much his agents as they were of the
others, and he is therefore not in a position to complain on
that ground, or to thereby escape the legal effect of his
contract.   Equity, in view of the common misfortune of all
the members of the society in consequence of insolvency,
will adopt the rule of equality and justice to all.   By the
voluntary act of the directors, manifested by their resolu-
tion to discontinue business, and to apply for the appoint-
ment of a receiver, the further continuance and performance
of the contracts of the society was abandoned, and equity
requires that each member be restored as equally near to
his condition before membership as the nature of the case
will permit.   The conditions here nearly resemble a co-
partnership.   King v. I. B. U., *supra.*   No reason is appa-
rent why the general rules applicable to the settlement of a
partnership between its members should not be here applied.
Where one partner has received more than his share of the
assets he is so charged in the accounting.   In the case pre-
sented this can only be done by requiring appellee to restore
the money advanced to him, and also that he perform his
primary contract by paying the installments of his stock sub-
scription, as must all other members not receiving advances,
and as a partner who had not paid his share of capital stock
would be required to do.   The mortgage, as we have seen,
was given to secure this, in consideration of the advance-
ment to him by the society, and therefore appellant is enti-
tled to a lien upon the mortgaged premises for any balance,
upon a fair and equitable accounting, that may be due to
him.

The better sustained rule, in reason and by the authori-
ties, in our opinion, for such accounting, is the one prescribed
in Towle v. Am. B. L. & I. Society, 61 Fed. Rep. 446, and

Sullivan v. Stuckey, — Fed. Rep. —, which is that appellees are chargeable with the amount of money actually received by them, with legal interest thereon from the time it was received, and are entitled to credit for all interest and premium paid, and are chargeable with so much of the gross premiums as was earned at the time the society passed into the possession of the receiver, estimating the life of the loan as eight years. To free this rule from the imputation of being arbitrary in respect to adopting eight years as the life of the loan for the purpose of refunding the premium, it may be stated that it seems to have its origin in analogy to section 10 of the statute under consideration.

It therefore follows that, in our opinion, the decree of the Circuit Court is erroneous, and it will be reversed and the cause remanded to that court, with directions to proceed in conformity with the views herein expressed. Reversed and remanded.