## William H. Collins et al. v. Ira M. Cobe et al.

1. BUILDING AND LOAN ASSOCIATIONS—*Act of 1879.*—The act of 1879, relating to building associations, provided that the money in the treasury, if $100 or more, should be offered for loan in open meeting, and the stockholders who should bid the highest premium for the preference or priority of loan should be entitled to receive a loan of $100, less the premium bid for each share of stock held by said stockholders.

2. SAME—*Act of 1879 Amended by Act of 1891.*—By the act of the General Assembly, in force July 1, 1891, the act of 1879 was amended in some respects, among others, as follows: Provided, that any such association may, by its by-laws, dispense with the offering of its money for bids in open, and, in lieu thereof, loan its money at a rate of interest and premium fixed by its by-laws, and either with or without premium, deciding the preference or priority of loans by the priority of the applications for loans of its stockholders.

3. SAME—*Member Who Has Recognized the Validity of Its By-Laws Can Not Be Allowed to Question Collaterally the Method of Their Adoption.*—A member of a building association who has for years recognized the validity of its by-laws can not be allowed to question collaterally the method of their adoption, and such member can not resist the payment of his obligations to such association on the ground that the by-laws have not been regularly adopted, where they have, in fact, been entered upon the records of the association, acted on, and enforced.

4. CONTRACTS—*Estoppel of One Who Has Had the Benefit of.*—One who has had the benefit of a contract can not set up as a defense that legal formalities were not complied with.

Foreclosure.—Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed November 11, 1902.

Collins v. Cobe.

W. J. LAVERY, attorney for appellants.

S. W. SWABEY, attorney for appellees.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is a foreclosure proceeding brought originally by the International Building, Loan and Investment Union. Appellants had executed a mortgage to the said union to secure the payment of $1,000 with interest and premiums on the loan. After filing the bill of complaint the original complainant was placed in the hands of receivers, and subsequently the assets of the union were sold by said receivers to the appellee Cobe, who thereupon filed an amended and supplemental bill.

It is not necessary to recite in detail all the proceedings. The case was referred to a master to hear proofs, and report his conclusions, and a decree was entered in appellee's favor for the full amount, principal and interest, found to be due, and directing the sale of the property described in the bill of complaint, unless payment should be made in satisfaction of the decree within three days.

It is claimed in behalf of appellants that the union had not complied with the laws of the State of Illinois at the time that the loan in this case was made, and that for want of such compliance the interest and premium secured to be paid by the note and trust deed are subject to the defense of usury. The loan was made at a fixed rate of interest and premium, and the money was not offered for loan in open meeting and bid in at a premium by the borrower. The statute of the State of Illinois in force prior to July 1, 1891, relating to building associations, under which the International Building, Loan and Investment Union was incorporated April 11, 1887, provided that " the money in the treasury, if $100 or more, shall be offered for loan in open meeting, and the stockholders who shall bid the highest premium for the preference or priority of loan shall be entitled to receive a loan of $100, less the premium bid for each share of stock held by said stockholders." (See Starr & Curtis' Statutes, Par. 115, Chap. 32, p. 1043, Vol. 1.)  By

the act of the General Assembly in force July 1, 1891, the act of 1879, under which the union was organized, was amended in some respects, among others, as follows : "Provided that any such association may, by its by-laws, dispense with the offering of its money for bids in open meeting, and in lieu thereof, loan its money at a rate of interest and premium fixed by its by-laws, and either with or without premium, deciding the preference or priority of loans by the priority of the applications for loans of its stockholders." Hurd's Rev. Stat., Chap. 32, Sec. 85.

Prior to the passage of this amendment, the by-laws of said union had provided that shareholders applying for loans should make application upon a blank furnished by the union for that purpose, and that all applications should be filed and numbered consecutively as received, and should be examined, approved or rejected by the board of directors of the union in regular order. It was further provided, that on all loans made by the union to shareholders, the rate of interest and premium should be fixed at five per cent per annum in each case. It thus appears that prior to the adoption of the amendment last above referred to, the union had fixed by its by-laws a uniform rate of interest and premium at which to loan its money, and had provided for deciding the preference or priority of loans by the priority of the applications in regular order, substantially as the amended statute subsequently authorized. It is claimed by appellant that inasmuch as said by-laws had been enacted prior to the passage of the amended act in force July 1, 1891, which gave such associations the power to dispense, by their by-laws, with offering their money for bids in open meeting, these by-laws were in contravention of the statute of Illinois at the time they were adopted, and that they continued to be invalid, notwithstanding the amended statute, because they were not subsequently re-enacted. It is contended, therefore, that the contract in question was usurious for want of valid by-laws authorizing it, and that the court erred in not sustaining that defense.

It appears to be uncontradicted that the loan in question

was made in compliance with the provisions of the by-laws referred to, which are in accordance with the provisions of the amended statute. The contention of appellant is that it was necessary for the board of directors of the union to go through the form of re-adopting these by-laws after the passage of the act of 1891, in order that they might become valid and operative under that act. It is clear, however, tqat the union had power to make the loan at the time it was made in the manner provided by the statute. The statute then authorized it " by its by-laws " to dispense with the offering of its money for bids in open meeting, and its by-laws so provided. The contract is one which the corporation then had power to make, and it was within the scope of its franchise. One who has had the benefit of the contract can not set up as a defense that legal formalities were not complied with. Lurton v. Jacksonville Loan Association, 187 Ill. 141–143.

We do not regard it as at all material that the by-laws in question were enacted prior to the authorization conferred by the act. We are not referred to any authorities sustaining appellants' claim that it was necessary for the union to go through the form of re-adopting by-laws which had been previously enacted, and which by the passage of the amended statute were made valid. The effect of the passage of the act and of the action of the union under it, together with the acceptance of the loan made in accordance with the by-laws and statutes, must be held to have been an acceptance and acquiescence on the part of both parties, and as having the same force and effect, so far as the present contract is concerned, as if the by-laws had been formally re-enacted. Even if this were not so, the contract would not be *ultra vires* in the proper sense, because it is within the powers conferred upon the corporation by the legislature. Lurton v. Jacksonville Loan and Building Association, *supra.* It has been held that a member of a building association who has for years recognized the validity of its by-laws can not be allowed to question collaterally the method of their adoption, and such member can not

resist the payment of his obligations to such association on the ground that the by-laws have not been regularly adopted, where they have been in fact entered upon the records of the association, acted on, and enforced.  Morrison v. Dorsey, 48 Maryland, 461–472; Hagerman v. Ohio Building & Loan Association, 25 Ohio State, 186.

It appears that the said union had provided a reserve fund which was created by deducting from the amount of each loan a sum equal to five per cent of its face value. The reserve fund was held as the property of such shareholders as should remain members for the full term of their contract and was credited to all shareholders alike.  It thus aided in maturing their respective shares of stock, enabling them the sooner and more surely to cancel their indebtedness to the union.  It is contended that this was not authorized by law and must therefore be considered as in the nature of usurious interest charged by the union for the loan.  We can not agree with this contention.  The reserve fund was created for the benefit of all shareholders alike. It is not contended that the provision was in any way inequitable, and we know of no reason why the association could not, with the consent of its members, enact such a by-law and create such fund.  At all events, appellants agreed to the deduction therefor at the time the loan was made, and having agreed to the provision and made payment without objection and protest at the time they procured the loan, it is now too late for them to object.

It appears from the record that the only exceptions to the master's report which were not waived at the hearing were those which urged that the complainant, Cobe, was not the owner of the note and mortgage sued on, and that the method of awarding the loan to appellants and fixing the rate of interest and premium was illegal.  It is too late to raise any other objection in this court.  Finding no error in the record the judgment of the Superior Court is affirmed.