## Enoch Broch, Receiver, etc., v. Arthur T. French, et al.

1. DECREE—*when, cannot be collaterally attacked.* A decree declaring a homestead loan association insolvent, appointing a receiver therefor, and directing the collection of its outstanding loans, cannot be collaterally attacked where the court has jurisdiction both of the parties and of the subject-matter.

2. HOMESTEAD LOAN ASSOCIATION—*nature of.* A homestead loan association is a sort of expedient resorted to for the more convenient prosecution and control of the peculiar copartnership business for which it was organized.

3. HOMESTEAD LOAN ASSOCIATION—*relation of borrowing member to a.* The transaction between a member and the association called borrowing, is simply allowing the member to receive money on his shares of stock in advance of their maturity, in pursuance of the plan and purpose of the association.

4. HOMESTEAD LOAN ASSOCIATION—*when borrowing member of, becomes in default.* When a homestead loan association, through mismanagement, becomes so conditioned that it cannot carry on the purposes for which it was organized, and the court has appointed a receiver and ordered him to collect the assets of such association for the purpose of making equitable distribution thereof, and the borrowing member fails to pay in full within a time ordered by the decree of the court, then and thereafter he is in default.

5. HOMESTEAD LOAN ASSOCIATION—*when application for loan from, presumed to have been acted upon.* In the absence of a contrary showing, the presumption is that an application in writing, specifying the loan desired and the amount of premium bid, was acted upon at a regular monthly meeting open to shareholders.

6. USURY—*when borrowing member of homestead loan association cannot successfully urge.* Where a member of a homestead loan association bids for a loan at a specified premium, and his bid is accepted and the money loaned in good faith, such member is estopped after reaping the benefits of the transaction, to urge that usury was charged.

Foreclosure proceeding. Error to the Circuit Court of Jefferson County; the Hon. EDMUND D. YOUNGBLOOD. Judge, presiding. Heard in this court at the February term, 1904. Reversed and remanded with directions. Opinion filed September 9, 1904.

WILLIAM H. GREEN, for plaintiff in error.

G. GALE GILBERT, for defendants in error.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was a bill in chancery, in the Circuit Court of Jefferson County, by plaintiff in error against defendants in error, to foreclose a mortgage.

The Columbian Loan Association was organized under the Illinois Homestead Loan Association Act of June 10, 1879. On December 1, 1894, D. B. French and Elizabeth French, his wife, became members, borrowed $200, and secured the same by assigning to the association their shares of stock and executing their bond and a mortgage on certain real estate in Jefferson county.

The Circuit Court of McLean County, Illinois, having acquired the jurisdiction of the association, its business and assets, on the 10th day of June, 1899, duly appointed plaintiff in error receiver, and imposed upon him as such receiver divers duties, among them being the duty to collect indebtedness due to the association, and to that end empowered him to institute and prosecute foreclosure proceedings upon all mortgages remaining unpaid for a period of six months from the last date at which dues, interest and premium were paid in full. That the court also decreed that the principal sum of money borrowed, together with the unpaid interest, premiums and fines due under the by-laws of the association up to June 10, 1899, together with any sum advanced by the association for insurance, taxes or assessments upon the mortgaged premises, and interest thereon since June 10, 1899, at the rate of five per cent per annum, shall constitute the indebtedness of the borrower to the association. By the terms of this decree the monthly dues in payment of his stock which a borrowing member had paid, stood to the credit of his stock, the same as did such payments made by non-borrowing members, but in the marshalling of assets he could not take credit for such payments in discharge of his loan. The decree treats the loans as assets of the association, and the shares of stock, to the extent they had been paid for, as liabilities. While a borrowing member is required to repay his loan in full,

Broch v. French.

he is permitted to share in the assets to the full extent accorded to a non-borrowing member. The borrowing stockholders in the case at bar made default and the receiver filed his bill against them to foreclose, but before the case came on for hearing, D. B. French died leaving him surviving his wife, the co-defendant, and his son Arthur. The bill was amended by making Arthur a party defendant. The bill claims the amount of indebtedness to be $209.90, and claims a solicitor's fee of $40, provided in the mortgage.

Defendants in error deny that they were in default, and charge that the association did not conduct its business in accordance with the requirements of its by-laws, and of the statute under which it was organized, in this: that it sold prepaid stock; that the amount of the premium was not fixed by bids; that the loans were not made at regular monthly meetings open to shareholders; and they aver that by reason of such irregularities the association forfeited its right to avail itself of the Homestead Loan Association Act and became amenable to the law against usury. The trial court took defendant's view of the case, held the contract usurious, applied all payments to the discharge of the principal, found the amount due to be $36, allowed $10 as a reasonable solicitor's fee and rendered a decree in accordance therewith.

It appears to be true that at the time the association was declared insolvent and the receiver appointed, defendants in error were not in default, but this cannot avail them. The court that declared the association insolvent, appointed a receiver and directed the collection of outstanding loans, had jurisdiction of both the parties and the subject-matter, and that decree cannot be attacked collaterally. Defendants in error are bound by that decree although not directly made parties to the proceedings. They were members of the association and through it, parties to the proceedings. Great Western Telegraph Co. v. Gray, 122 Ill. 630. The relation sustained by the members of such association to each other is essentially that of copartners, and the corporation is a sort of expedient resorted to for the more con-

venient prosecution and control of the peculiar copartnership business for which the association was organized. Such corporations do not deal at arm's length with their members, as an ordinary corporation does with strangers. The transaction between a member and the association called borrowing, is simply allowing the member to receive money on his shares of stock in advance of their maturity, in pursuance of the plan and purpose of the association.

When defendants in error and their fellow members had so mismanaged their association as to bring it into such condition that it could not carry out the purpose for which it was formed, and the court had appointed a receiver and ordered him to collect the assets for the purpose of making equitable distribution thereof among the members, and defendants in error had failed to pay within the specified time, then and thereafter they were in default. Hedley v. Geissler, 90 Ill. App. 565. The adjustment of the affairs of a homestead loan association which is being wound up by the court because it cannot carry out the purpose for which it was organized, should proceed on the principle of rescission so far as the same can be equitably and justly applied; each member should pay back what he has received, with compensation for the benefit and use thereof, and receive back what he has paid in, or his proportionate share of what the assets when marshalled may produce. Thompson on Building Associations, 2nd ed., p. 618. It would be manifestly unjust to allow defendants in error to receive in advance a hundred cents on each and every dollar they paid in, thereby compelling other equally innocent and equally worthy members to accept after the lapse of years, only a few cents on the dollar, or it may be nothing, for what they paid.

In pursuance of one of the by-laws of the association, it has issued certain stock, denominated "dividend-bearing stock." It is also referred to in the same by-law as "prepaid stock." So far as is disclosed in the by-laws or by any evidence in the record, this stock was in no true sense "paid up stock." Its withdrawal value was based upon the

Broch v. French.

amount paid in, and not upon its face value.  The time of its maturity was dependent upon all the conditions incident to purely installment stock.  The two classes of stock were accessible to all members alike and were interchangeable.  There is no evidence of a fraudulent purpose on the part of investors to evade the usury laws, and this we understand to be the true test.

As to the charges that the amount of premium was not fixed by bids, and that loans were not made at regular monthly meetings, open to shareholders, it is true that defendants in error and some other borrowing members did not attend in person and make oral bids at monthly meetings, but applications were made in writing specifying the amount of premium bid and were presumably acted on at regular monthly meetings open to shareholders.  But however this may be, we think the recent cases of Lurton v. Jacksonville Loan Association, 187 Ill. 141, and Collins v. Cobe, 104 Ill. App. 142, are conclusive of the controlling features of this branch of the case.  " One who bids for a loan at a specified premium, which bid is accepted and the money loaned in good faith, is estopped, after reaping the benefits of the transaction, to deny the validity of the loan on the ground that there was no competitive bidding."  The contract was in no sense *ultra vires*.

The decree of the Circuit Court of Jefferson County is reversed and the case is remanded, with directions to that court to enter a decree in favor of complainant, against the defendants, for $200, with interest thereon at the rate of five per cent per annum from the date of their default to the date of the entry of such decree, and for a reasonable solicitor's fee, not however in any event to exceed the sum of forty dollars.

*Reversed and remanded with directions.*