## William P. Wright, Receiver of the Thirty-first Street Building & Loan Association, v. Bridget Curtin.

### Gen. No. 13,525.

1. HOMESTEAD LOAN ASSOCIATION—*upon whom 'burden rests to prove usury.* The burden of proving usury in a foreclosure proceeding instituted by a homestead loan association rests on the party interposing such a defense. Such proof must be confined to the loan in controversy, without regard to the conduct of the association in the making of any other loan not involved in the cause before the court.

2. HOMESTEAD LOAN ASSOCIATION—*what member estopped to deny.* In the absence of fraud, a member is estopped to deny the verity of

the recitals in an application for loan, nor can a member escape the liability arising therefrom under a plea of failure to read the document or ascertain its contents before signing.

3. HOMESTEAD LOAN ASSOCIATION—*what member estopped to deny.* A member is estopped to deny the fact of being a stockholder at the time of obtaining a loan, where such member became a stockholder in order to effect a loan transaction and assigned to the association the stock then obtained.

4. HOMESTEAD LOAN ASSOCIATION—*when law with regard to loaning money complied with.* If an association offers money for loan in an open meeting, the statute is complied with, even though no bid other than the one accepted was made.

5. HOMESTEAD LOAN ASSOCIATION—*what decree with respect to, binding upon members.* A decree declaring an association insolvent and ordering the collection of all its outstanding loans, whether matured or not, whether in default or not, is binding upon members, even though not parties to the proceeding in which it is rendered.

6. HOMESTEAD LOAN ASSOCIATION—*how accounting upon foreclosure of mortgage by insolvent should be made.* A member should be first required to pay the principal sum borrowed, regardless of any payments made towards the maturing of the stock; then he becomes entitled, after the debts of the corporation are paid, to a *pro rata* dividend with the non-borrower for what he has paid upon his stock.

Foreclosure. Error to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the March term, 1907. Reversed and remanded with directions. Opinion filed December 2, 1907. Rehearing denied December 16, 1907.

FRANKLIN E. VAUGHN, for plaintiff in error.

FREDERICK MAINS, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The parties to this record will be referred to in this opinion respectively as plaintiff and defendant, except when the Thirty-first Street Building & Loan Association is intended, and then it will be designated as the Association.

The bill was filed to foreclose a real estate mortgage given by defendant, a widow, to the Association on June 19, 1894, to secure a loan made by her from

the Association of $1,400 on fourteen shares in the thirty-second series of the Association stock. Anterior to the filing of the bill and in a proceeding to wind up the Association in the case of Quinlan et al. v. The Association, brought in the Superior Court, William P. Wright was, by an order entered in that suit April 25, 1904, appointed receiver of the Association, and the bill found in the record was filed pursuant to an order entered in that suit. By decree entered June 16, 1904, in the Quinlan suit said William P. Wright was made permanent receiver of the Association.

The defendant in her answer charged that the Association in making the loan failed to conform to the requirements of the statute governing loans made by building and loan associations, requiring that loans be made only by competitive bids, and that by reason of such failure the loan was by legal construction usurious. To this answer plaintiff filed a general replication, and the cause on the issue so joined was referred to a master to take the proofs and report his conclusions of fact and law therefrom to the court. The master's term expired before the conclusion of the hearing before him, and he failing of reappointment, the case was re-referred to him as special commissioner. The commissioner made two reports. After sustaining objections made to the first report, the same was amended. The report as amended was met with objections from both parties, which the commissioner overruled and they were then filed and allowed to stand as exceptions before the chancellor. The report as amended was in favor of plaintiff, finding that there was due plaintiff from defendant $505.96 on the loan, with an additional sum of $200 for solicitors' fees, making in all $765.96, for which latter sum the commissioner found plaintiff had a first and valid lien upon the mortgaged premises.

On the hearing of the exceptions to the commissioner's amended report the chancellor overruled those of plaintiff and sustained the exceptions of defendant,

and entered a decree dismissing the bill for want of equity. By this writ of error the decree of the chancellor is sought to be reversed, with a direction to the Superior Court to enter a decree for the whole amount of plaintiff's claim.

The arguments are embraced within the third and fourth assignments of error, viz.: Error in finding that the loan and securities involved were tainted with usury, and that plaintiff was not entitled to recover interest, and error in finding that defendant was entitled to be credited on the principal sum advanced, with all money paid on account of stock, instead of finding that defendant should only be credited with twenty per cent. of the installments paid on stock.

The burden of proving usury in a foreclosure proceeding of a building and loan association rests on the party interposing such a defense to maintain by a preponderance of the evidence. Such proof must be confined to the loan in controversy, without regard to the conduct of the association in the making of any other loan not involved in the cause before the court. Hotchkiss v. Norwood Park Association, 229 Ill. 248.

The record book of the Association was put in evidence on the hearing, and shows the following minute, entered June 19, 1894, at a regular meeting of the board of directors:

"Mrs. Bridget Curtin" (defendant) "and Martin V. Lewis, being personally present, bid for an advance on 14 shares and 75 shares of the 32nd series respectively. There being no higher bids, the applications were accepted subject to the approval of the securities."

Charles H. Baldwin, secretary of the Association, who recorded the foregoing recited minute, testified that he knew defendant, that his recollection was that she was present at the meeting of June 19, 1894, and made the bid set forth in the minute, and that aside

from the minute in the record he had an independent recollection of defendant being personally present.

It is also recited in the formal application for the loan, under the signature of defendant, that at a regular meeting of the board of directors held June 19, 1894, she obtained preference for an advance on fourteen shares of stock of the thirty-second series at a premium of twenty-five per cent. In the absence of fraud, defendant is estopped from denying the verity of the recitals in her loan application. Stewart v. Metcalf, 68 Ill. 109. Nor can she escape the liability arising therefrom under a plea of her failure to read the document or inform herself of its contents before signing. One cannot advantage by an act of omission in the nature of negligent conduct. Wabash R. R. v. Thomas, 122 Ill. App. 569.

In denial of this direct and positive evidence is the testimony of defendant, an apparently frank and honest woman, but wholly unsophisticated in the ways of business affairs. She testifies in one place that her memory is "awfully poor," and in another, "I have had so much trouble I have no memory," and again, "I have no memory, as I told you before." While she denies in positive terms being present at the meeting of the directors and of bidding for the loan June 19, 1894, still were she right in this, she is met with her written authority empowering secretary Baldwin to bid for the loan in her name. The dispute in the Hotchkiss case *supra* was similar to the one here—as to whether or not the bid was in person or by the secretary with authority from Hotchkiss. The direction to the secretary to bid for the loan was upheld as sufficient and binding on the borrower. It is too plain for discussion that defendant utterly fails in maintaining her contention that the loan was not made upon her bid.

It is also insisted that there was no competitive bidding—that the bid of defendant was the only one made or received—and that this fact establishes that

the statutory requirement in respect to competition in bidding was not complied with. While defendant's bid may have been the only one made, yet the evidence establishes that the money was offered in an open regular meeting of the board of directors, and that although other bids were called for, none was made. The Hotchkiss case *supra* is also instructive on this point. There one bid only was made. The court say, p. 259: "but if he did bid thirty-five per cent. at the first bid made by him, and no one else bid against him, this of itself would not render the transaction fraudulent, unlawful and usurious. If the preference was offered in open meeting to the highest bidder, and opportunity given to all persons desiring to do so to bid, this was a compliance with the law, and the fact that only one person made a bid would not render the transaction usurious, as having been made contrary to law." This is the latest expression of the court's opinion on this question, rendered at its last adjournment, in which opinion it cites with approval Home Building & Loan Association v. McKay, 217 Ill. 551, where the court said, "We do not construe the statute to require that there shall be more than one bidder present at a meeting at which a loan is made, but only that opportunity shall be given for competitive bidding, and that priority or preference for a loan shall be awarded to the highest bidder. If but one bidder for a loan appears before the Board at any stated meeting, the Board may lawfully accept his bid and the contract will not be usurious though the interest and premiums exceed the highest rate fixed by the general interest laws of the State."

Defendant insists that at the time the Association received her bid she was not a stockholder. While this is undoubtedly true, yet she is foreclosed from setting up such claim as a defense, because she admittedly subscribed for the stock and took it out in perfecting the loan, and assigned and delivered such stock to the

Association as collateral security for the loan at the time she executed and delivered the bond and mortgage evidencing and further securing the loan. In the McKay case *supra* the court say on this subject: "But we think it fairly to be assumed that one who appears at a meeting of the board of directors of an association and bids for a loan does so with full knowledge that he must become a stockholder before he can lawfully receive the funds of the association by way of a loan or advance, and that his bid is on that basis. If the loan is awarded to him and he subsequently becomes a stockholder and receives the funds of the association as a loan to him in that capacity, he cannot be permitted to urge that he was not competent to bid for a loan at the time that he did so, and that this irregularity taints the loan with usury."

Knowledge of the force and effect in law of the acts of defendant in bidding for the loan, in subscribing for the stock of the Association, in assigning such stock as collateral security, in the making of the bond and mortgage, and in delivering all of them to the Association and receiving from it the amount of the loan, is imputed to defendant and binding upon her. The full measure of the obligation so incurred is as announced in the McKay case *supra,* and rests in the obligations which defendant solemnly evidenced by her bond and mortgage to the Association and in faith of the binding force of which the loan was made by the Association and accepted by the defendant.

Defendant denies that the decree in Quinlan v. The Association, directing its winding up and that the receiver proceed by foreclosure to collect the amount due on defendant's mortgage to the association, is binding upon her. This position is not supported by authority. Great Western Tel. Co. v. Gray, 122 Ill. 630. In Broch v. French, 116 Ill. App. 15, the court say: "It appears to be true that at the time the Association was declared insolvent and the receiver appointed, de-

fendants in error were not in default, but this cannot avail them. The court that declared the association insolvent, appointed a receiver and directed the collection of outstanding loans, had jurisdiction of both the parties and the subject-matter, and that decree cannot be attacked collaterally. Defendants in error are bound by that although not directly made parties to the proceeding. They were members of the Association and through it parties to the proceeding.'' This reasoning applies to defendant and she is therefore concluded by the order entered in the Quinlan case as a member of the Association and as such a party to the cause. Chapman v. Young, 65 Ill. App. 131.

From what we have already said, it is clear that the Association, in the making of the loan to defendant, complied with all the essential and material requirements of the statute governing the Association in such matters, and that the loan so made is not usurious.

We will now proceed to ascertain and declare the basis upon which the account should be stated.

By paragraph 5 of the decree in the Quinlan case it is provided: ''Borrowing shareholders to be credited with amount of dividends payable upon their shares when they make repayment of their loan, but credit to be as of date when dividends are payable to non-borrowing stockholders.''

Defendant sustained a dual relation to the Association. She is a stockholder and a borrower. As a stockholder she is a creditor of the Association and entitled to share in the distribution of the assets of the Association to the same *pro rata* extent as any other stockholder. She is entitled to no more dividends than are the non-borrowing stockholders. Being a debtor confers no advantage upon her not shared by all the other stockholders in common. She is entitled in law and under paragraph 5 of the decree in the Quinlan case, to a credit upon whatever amount may be due on her indebtedness of dividends payable on the amounts paid

Wright v. Curtin.

by her upon the shares of stock subscribed by her as of the date when such dividends are declared payable. Defendant was as much responsible for the non-success of the Association as any other stockholder, and must therefore bear with them an equal share of the loss proportioned to her stockholdings. As said in Choisser v. Young, 69 Ill. App. 252: "As a stockholder appellant assumed, with other stockholders, all the risks incident to such relation, and when the Association became insolvent he had no more right to withdraw from the assets premiums paid in by him and thus decrease the assets in which every stockholder had an interest, than other stockholders had to withdraw the payments made by them of installments, interest and premiums. No guarantee was made to him that the Association would continue doing business until his stock would become matured, and no promise of that kind can be assumed as a condition upon which he had paid the premium.

The master's report refusing to deduct the premiums from his debt was right, and the decree approving the same and directing the amount so found due was not usurious."

To a like effect is Sullivan v. Spaniol, 78 Ill. App. 125; Dooling v. Davis, 84 *ibid.* 393.

Towle v. Am. Bldg. Loan & Inv. Association, 61 Fed. R. 446, is a very instructive case upon many of the questions involved in the case at bar. It was there held that a borrower was not entitled to a credit for assessments paid upon stock, nor for fines paid. So to do would be giving the borrowing stockholder a preference over the non-borrowing stockholder, and result in allowing par for his stock and freeing him from the consequences of his personal delinquencies. As to the premium bid for the loan, the court allowed credit for such part of it as was unearned, upon the theory that the bid was made on the assumed expectation that the full period for loan would expire by maturity of the

stock before demand for payment could be made, which the insolvency of the Association and the appointment of a receiver interrupted.

In Pennsylvania it has been held that when an Association such as the Association here becomes insolvent, the preferences and methods of payment provided by the statute do not apply, but that "the assets fall into the lap of the law for distribution, which knows no preference." Criswell's Appeal, 100 Pa. St. 488.

While we do not deem it necessary to the decision of this case to go so far as the Pennsylvania court, or to decide whether or not the effect of insolvency in this jurisdiction is as declared in the Creswell case, yet the basis of stating the account between the Association and the borrower pronounced in Strohen v. Franklin Savings & Loan Ass'n, 115 Pa. St. 273, appealing to us, as it does, as being most in keeping with equity and right as a fair and just method, we are constrained to adopt it as the method here to be pursued.

As said in the Strohm case, *supra:* "The insolvency of the company puts an end to its operations as a building association; to a certain extent it also ends the contract between it and its members respectively, and nothing remains but to wind it up in such a manner as to do equity to creditors and between the members themselves. As regards the latter, care should be taken to adjust the burdens equally and not to throw upon either borrowers or non-borrowers more than their respective share. That result may be reached by requiring the borrower to repay what he actually received with interest. He would then be entitled, after the debts of the corporation are paid, to a *pro rata* dividend with the non-borrower for what he has paid upon his stock. He will thus be obliged to bear his proper share of the losses. To allow him to credit upon his mortgage, his payments on his stock, would enable him to escape responsibility for his share of the losses and throw them wholly upon the non-borrowers.

In other words, the borrower would escape without loss. It will not do to administer the affairs of an insolvent corporation in this manner.''

This method is substantialy in accord with that directed in Sullivan v. Spaniol, *supra*.

Many other questions of more or less importance are discussed by counsel, which we do not deem necessary further to amplify in support of the conclusions we have reached.

The decree of the Superior Court will be reversed and the cause remanded with directions to enter a decree of foreclosure, as prayed for in the bill, under an accounting based on charging defendant with the amount actually loaned, viz., $1,050, with interest thereon from June 19, 1894, $13.20 fines and $30 sundries, and allowing as credits $758.50 interest paid, $16.50 for sundries, and 20 per cent on the several installments paid upon stock which the master finds amounts to $154.50. Plaintiff will also be allowed solicitor's and master's fees in the amounts found reasonable in the master's report.

As it is apparent from the record that this is a test case, and that this appeal is prosecuted as much for the purpose of ascertaining the proper method of adjusting the loans of other members of the Association in a similar situation as defendant, as it is for the purpose of ascertaining the amount due from defendant, we do not deem it just that all the costs of this appeal should be made to rest upon defendant. The costs of this appeal will therefore be apportioned equally between the parties to it.

*Reversed and remanded with directions.*